IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF BENTON

| | |
|---|---|
| **GABRIEL WINKLER**, | Case No.  25CV56719 |
| Plaintiff, | **PLAINTIFF'S COMPLAINT** |
| vs. | **AMOUNT CLAIMED IN PRAYER:** **$4,512,313 (ORS 21.105(1))** |
| **OREGON STATE UNIVERSITY**, and **S. SCOTT BARNES**, an individual, | **NOT SUBJECT TO MANDATORY ARBITRATION** |
| Defendants. | **DEMAND FOR JURY TRIAL** |
| | **FILING FEE PER ORS 21.160(1)(d): $884** |

Plaintiff Gabriel Winkler appears herein to bring the following complaint against the Defendants, Oregon State University and S. Scott Barnes.

**PARTIES**

1.

Plaintiff Gabriel Winkler ("Winkler") is an individual and a resident of Benton County, Oregon.

2.

Defendant Oregon State University ("OSU") is a public university operating in Benton County, in the state of Oregon.

3.

Defendant S. Scott Barnes is a resident of the state of Oregon, and at all material times was the Vice President and Director of Intercollegiate Athletics at Oregon State University.

**VENUE**

4.

Venue is proper in this court as all acts and omissions forming the bases of Plaintiff's claims occurred in Benton County, Oregon.

1 –   PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

Notice of Removal - Exhibit A
Page 1 of 66

1

## FACTS COMMON TO ALL CLAIMS

2

## PLAINTIFF'S PERFORMANCE

3

5.

4

Plaintiff was the rowing head coach for the OSU men's rowing team for 11 years, until

5

his termination on August 12, 2025.  Prior to holding the head coach position, Plaintiff

6

served as the assistant coach for the men's rowing team for six years.

7

6.

8

On September 23, 2021, with an effective date of September 1, 2021, Plaintiff and

9

Defendant OSU entered into an Employment Agreement for Plaintiff's employment with

10

OSU for the period September 1, 2021, through August 31, 2024.  A true and accurate copy

11

of that Employment Agreement is attached here as Exhibit 1.

12

7.

13

On September 17, 2024, Plaintiff and Defendant OSU entered into a First

14

Amendment to Employment Agreement.  That Amendment, among other things, extended

15

the term of the Employment Agreement to August 31, 2026.  The First Amendment to

16

Employment Agreement is attached here as Exhibit 2.  The Employment Agreement and its

17

Amendment are referred to herein as the "Employment Agreement" and their terms are

18

incorporated herein.

19

8.

20

As material here, pursuant to the Employment Agreement, Plaintiff was hired into the

21

position of head coach for OSU's men's rowing team.  As head coach, Plaintiff was

22

obligated to do the following:

23

- Devote his best efforts to his coaching duties, student athletes on the rowing

24

team, and the success and furtherance of OSU's rowing program;

25

- Support and supervise the student athletes with regard to personal, physical

26

and intellectual development;

2 –   PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

- Adhere to his assigned budget;
- Comply with all applicable policies and NCAA conference rules;
- Comply with Oregon's Government Ethics laws;
- Cooperate with all investigations;
- Report to Defendant OSU all athletically related outside income he earned, and comply with Defendant OSU's agreements with any outside vendors;
- Promote the academic excellence of the student athletes on his team;
- Supervise his assistant coaches;
- Develop programs that promote the athletic and academic excellence of the athletes on his team;
- Fulfill all of his job responsibilities in a professional manner; and,
- Receive approval from Defendant Barnes for his team's schedule.

9.

Under Section 1.3 of the Employment Agreement, Plaintiff could not:

- Engage in any business without following specific steps;
- Commit any Level I or II NCAA violations or repeatedly commit Level III violations;
- Condone any violations of policy or law by his assistant coaches or student athletes.  Condoning a violation is defined as either having actual knowledge and complicity in a violation, or failing to report a known violation within a reasonable time;
- Receive other benefits related to his coaching for Defendant OSU;
- Do anything that would bring embarrassment to Defendant OSU;
- Enter into agreements purporting to bind Defendant OSU;
- Fail to report sexual misconduct to Defendant OSU's Title IX Coordinator; or,
- Negligently or intentionally fail to fulfil his duties as head coach.

3 –   PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

Notice of Removal - Exhibit A
Page 3 of 66

10.

The Employment Agreement further provided for an annual base salary, increasing each year of the Agreement, and incentive payments if specifically identified athletic and/or academic metrics were met.

11.

The Employment Agreement could be terminated for various reasons.  Material here, Section 4.1 of the Agreement states:

4.1    Termination by University for Cause.

(a)    Employment under this Agreement may be terminated prior to the end of the Term, or sanction imposed, if Coach fails to faithfully and diligently carry out all duties and responsibilities described in this Agreement or violates any of the proscriptions against conduct specified in Section 1.3.

(b)    Coach waives any rights Coach may have to a hearing under University Policies 576-050 and 580-021. Coach shall, however, be notified of the grounds for termination being considered by University and shall have an opportunity to present a statement of denial, explanation and/or extenuation before such termination is finalized.

(c)    The decision whether to terminate employment under this Agreement for cause shall be made by the Director or the President. In reaching a decision whether to terminate, or impose a lesser discipline, the Director or President will take into consideration the severity of the actions(s) or omission(s) that constitute the cause for termination.

(d)    In the event University terminates employment under this Agreement for cause prior to the end of this Agreement, all obligations of University to make further payments and/or to provide other consideration under this Agreement shall cease as of the end of the month in which such termination occurs,

4 –    PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

provided that Coach will be entitled to earned but unpaid compensation and
reimbursement for previously incurred and approved expenses. University is
not liable to Coach for any loss of collateral business opportunities or any
other benefits, perquisites or income.

12.

Plaintiff performed exceedingly well in his position as head coach.  Every year that
Plaintiff served as head coach, the men's rowing team was in the top three finishers in the
former Pac-12 conference and qualified for the men's rowing National Championships. In
each of those championships, Plaintiff's team placed in the top 20 in the country.

13.

Plaintiff's athletes also consistently had the highest average grade point average of
any men's team in the OSU athletic department.  For the term immediately preceding
Plaintiff's termination, his team had a grade point average of 3.5, with nine of his athletes
having a perfect 4.0 grade point average.

14.

In 2025, over half of Plaintiff's athletes were named to the conference All-Academic
team, and 12 athletes were named to IRA (the governing body of collegiate rowing)
Academic Allstars.

15.

Under Plaintiff's leadership, the men's rowing team was consistently one of the best
fundraising teams in the OSU athletic department.  As an example, for the first three years of the
annual "Dam Proud Day", the men's rowing team led the athletic department for dollars earned.
In the season prior to Plaintiff's termination, his team raised $74,000 for Dam Proud Day.

16.

Under Plaintiff's leadership, the men's rowing team consistently had the highest total
hours of volunteer work in the OSU athletic department.

5 –   PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

Notice of Removal - Exhibit A
Page 5 of 66

17.

Plaintiff was reviewed annually by his supervisor and the Athletic Director, including Defendant Barnes. Plaintiff received consistent praise and support from his supervisors, including Defendant Barnes. Plaintiff was never informed during these reviews (or at any other time) that Defendants OSU or Barnes had concerns with the culture of the men's rowing team or his role in developing and leading that culture.

18.

During his time as both head and assistant coaches, Plaintiff was not the subject of any formal complaints, investigations for misconduct, or formal or informal discipline until he was terminated on August 12, 2025.

**PLAINTIFF'S PROTECTED ACTIVITY**

19.

The OSU men's rowing team is the only sanctioned sports team at OSU that includes male, female. and non-binary students on the same roster. Because of the unique diversity of genders found on the men's rowing team, Plaintiff took extraordinary efforts to ensure each athlete was respected by their fellow teammates and the coaching staff. To foster his desired environment of inclusiveness and mutual respect among his athletes, Plaintiff repeatedly and consistently discussed with his athletes the importance of personal accountability for their role in developing an equitable and kind team environment.

20.

To emphasize the importance that all athletes participate in creating and maintaining the rowing team as a safe space, Plaintiff instituted a mandate of reporting. Plaintiff required his athletes to report any potential or perceived instances of harassing, bullying or discriminating conduct to a member of the coaching staff or to OSU's Equal Opportunity Access office (EOA) directly. Plaintiff's encouragement of this reporting was directly in line with promotion of respectful and equal treatment of all athletes on the men's rowing team.

6 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

21.

As a direct result of Plaintiff's refusal to allow offensive, harmful, and/or potentially illegal activity to remain hidden and unreported, the men's rowing team, including the athletes, Plaintiff, and Plaintiff's assistant coaches, brought forward a comparatively large number of concerns and complaints to Defendant OSU's EOA office.

22.

Pursuant to Title IX of the Education Amendments (20 U.S.C. § 1681, et seq.) and university policy, Defendant OSU has a duty to properly document, report and investigate all complaints made to the EOA office.  Plaintiff's protected activity of reporting all potentially harassing and discriminatory conduct witnessed or brought to his attention, and his requirement that his athletes do so as well, resulted in more than usual investigatory action by the EOA office.

23.

On January 14, 2025, at rowing practice, two female athletes on the men's rowing team reported to Plaintiff that a male athlete on the team was pressuring girls and/or a non-binary athlete on the team into having sexual relations with him.  Immediately thereafter, Plaintiff took a break from practice to call his supervisor, the Associate Athletic Director of OSU, to report what had been told to him.  Plaintiff informed his supervisor that he would be contacting the EOA office to report what had been said.

24.

The next morning, January 15, 2025, at 8:00 a.m., Plaintiff filed a written report with EOA, describing what had been reported to him the previous evening.  After EOA confirmed receipt of the report, Plaintiff followed up with a second email to EOA, relaying the names of the two athletes who made the report to him.

25.

Plaintiff was not contacted by EOA or his supervisor about his January 15, 2025, report.  The two reporting athletes inquired with Plaintiff as to why they had not been

7 –   PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

contacted by EOA regarding their report.  Plaintiff assured them he had submitted the information to EOA, and he encouraged the athletes to contact EOA directly.  He also asked the athletes to let him know immediately if any further concerns arose that should also be reported to EOA.

26.

On February 4, 2025, EOA contacted Plaintiff to schedule a meeting with him and his coaching staff to discuss "the men's rowing team environment."  Plaintiff was not available at the time of day requested by EOA, so he proposed an earlier meeting time.  Instead of holding that meeting, EOA notified Plaintiff that it had received additional information that needed to be reviewed.  Plaintiff was never informed of the nature of the new information.

27.

During this same time period, Plaintiff and his assistant coaches were working through a behavioral issue with one of their female coxwains.  Between March 4 and 11, 2025, one of the assistant coaches met with several of the athletes to listen to their complaints about their teammate in an effort to gather sufficient information to develop a strategy for resolving the conflict the female coxswain was causing.

28.

On March 17, 2025, EOA held a meeting with Plaintiff and his two assistant coaches. The meeting consisted only of discussions about what a healthy team environment looks like, with several examples being given by the coaching staff of evidence of the men's rowing team's healthy environment.  During this meeting, Plaintiff and his assistant coaches also discussed the conflict being caused by the female coxswain and their efforts to address and resolve the issues.  At no time during that meeting did EOA indicate a concern with the environment of the men's rowing team or otherwise raise with Plaintiff concerns about the team culture.

///

8 –   PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

29.

Between March 24 and March 31, 2025, one of the female coxwains who reported the male athlete on January 14, 2025, again asked Plaintiff for an update on what was being done about the complaint.  Plaintiff assured her that he had made the report to EOA and suggested the female coxswain make another report to EOA to get the investigation moving forward.

30.

On March 31, 2025, EOA representatives met with the men's rowing team athletes to discuss the team.  Plaintiff and his assistant coaches were not present for this meeting.  After the meeting, EOA provided a report to Plaintiff and his assistant coaches of the topics discussed and comments made by the team members.  Nothing in that report referenced a negative team culture, harassment, or bullying.  Likewise, nothing on that report indicated a concern or dissatisfaction with Plaintiff or his leadership.  To the contrary, the EOA representative stated to Plaintiff and his assistant coaches that  "[w]e closed with small group scenarios to help them consider putting some of these elements together / in practice. We feel they are in a good place and primed to continue building on this initial conversation with you and your team captains."

31.

Sometime between late-April and mid-May 2025, Plaintiff's supervisor alerted him that EOA had closed its investigation into the January 15, 2025, report made by Plaintiff with no action being taken.  Neither Plaintiff's supervisor nor EOA gave Plaintiff guidance on how to deal with the situation.  Defendants were simply allowing the reported male to remain on the team with the female athletes who reported his illegal activity and the non-binary victim of his conduct with no action taken.

32.

Plaintiff did not believe a healthy and supportive environment could be maintained on his team for the female athletes if the accused male athlete remained on the team with no

9 –  PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

repercussions for his conduct.  Plaintiff decided it was in the best interest of the team to choose another athlete to take the reported male athlete's position on the team for the upcoming season.

33.

On June 4, 2025, Plaintiff reported to Defendants that he had taken the matter into his own hands, opposing the illegal practice of forcing the female and non-binary athletes to endure a sexually harassing and discriminatory environment caused by the male athlete by removing the reported male athlete from the team.

**SCOTT BARNES' RESTRUCTURING OF OSU ATHLETICS**

34.

Starting with the demise of the Pac-12 in 2023, OSU has suffered significant financial blows to its athletic department.  OSU estimated it would suffer a 44% revenue loss as a result of the Pac-12 realignment.  In addition to the significant loss of network funding following the Pac-12 announcement, OSU had to also begin revenue sharing with athletes for name, image, likeness (NIL) deals.  To save the OSU athletic department from financial collapse, Defendant Barnes was tasked with the duty of reducing the overall athletic department budget by 5.2%.

35.

During this time, OSU men's rowing, a non-revenue generating sport, was permanently dropped by OSU as a conference-sponsored sport.  OSU's women's rowing team remained a Pac-12-sponsored sport.

36.

Over the course of the past two years, Defendant Barnes made numerous media appearances to assure OSU alumni and donors that OSU was "committed to all sixteen Pac-12-sponsored sports, plus men's rowing."  However, the revenue lost from the Pac-12 realignment and the House settlement regarding NIL (requiring revenue sharing with OSU

10 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1    athletes), proved to be too large of a hurdle to overcome with the athletic department

2    remaining intact.

3                                              37.

4            On June 11, 2025, Defendant Barnes reported in an interview with Oregon Live that

5    he would be making "strategic cuts" and restructuring the OSU Athletic Department. On its

6    website, OSU stated that the athletics department "has already taken measures to reduce

7    ongoing costs by approximately $11 million or 10.9%, through various measures such as

8    reducing FTE, operations cuts of 5-15% and making other strategic cost-saving decisions."

9                                              38.

10           One of the cost-cutting measures Defendant Barnes decided on was to rid the athletic

11   department of the cost of Plaintiff's salary and bonuses.  Specifically, Defendant Barnes

12   developed a plan to restructure the OSU rowing teams into one large group, male and female,

13   consolidated under one head coach.  The women's rowing team remained a Pac-12 sponsored

14   sport.  The women's team head coach was not reporting and causing his athletes to report all

15   perceived instances of harassment or discrimination to the EOA.  He also had not opposed an

16   illegal practice by removing a male athlete from the team when Defendants refused to act on

17   the complaints against him.  For these reasons, Defendant Barnes decided to place the

18   women's rowing coach into the head coach position for the newly consolidated rowing group

19   instead of Plaintiff.

20              **PRETEXTUAL "FOR CAUSE" TERMINATION OF**
                    **PLAINTIFF'S EMPLOYMENT AGREEMENT**
21

22                                             39.

23           To remove Plaintiff from his position as the men's rowing team head coach for the

24   purpose of consolidating the teams under one head coach to save money, OSU was required

25   to follow the terms of the Employment Agreement.  Specifically, OSU was required to pay

26   Plaintiff his base salary for the remainder of the Employment Agreement.

11 –  PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

40.

Defendant Barnes did not want to incur the expense of paying Plaintiff his base salary for the remainder of his Employment Agreement. Doing so would nearly eliminate the savings sought to be realized by consolidating the OSU rowing teams under one head coach.

41.

To avoid OSU's payment obligation under the Employment Agreement, Defendant Barnes created a pretextual basis to terminate Plaintiff's Employment Agreement "for cause." If Plaintiff was terminated for cause, he was owed nothing under his Employment Agreement.

42.

On June 23, 2025, under the guise of meeting for Plaintiff's annual evaluation, Defendant Barnes and Jeff Macy, Plaintiff's supervisor, met with Plaintiff and told him that he was going to be terminated for cause. The cause identified by Defendant Barnes at the June 23, 2025, meeting was "too much noise around the men's rowing program tied to the EOA complaints" and a "bro-culture" on the men's rowing team that "created too many EOA complaints." Prior to these comments being made to Plaintiff, he had never been disciplined, counseled or investigated regarding his alleged creation or fostering of a negative culture among the men's rowing team athletes.

43.

Plaintiff asked Defendant Barnes to describe what he was referring to as creating a negative culture. Defendant Barnes could not give Plaintiff any examples of conduct constituting the alleged "cause" for termination of Plaintiff's Employment Agreement. Plaintiff asked what he needed to change with relation to the men's rowing team and was told only that "it" needed to change. Plaintiff was not given any directives or performance goals, he was not placed on a performance improvement plan, nor was any written documentation of this alleged concern made. This was because the alleged performance issues Defendant

12 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

Barnes raised were not real.  As Plaintiff's supervisor, Jeff Macy, explained to Plaintiff's coaching team, Defendant Barnes' choice to terminate for cause was not about Plaintiff's performance.  Rather, he confirmed, it was "all about money."

44.

On June 24, 2025, Defendant Barnes seemingly confirmed to Plaintiff that his termination was not, in fact, based on his failure to perform under his Employment Agreement.  On that date, Defendant Barnes informed Plaintiff that he was simply "moving in a different direction for the men's rowing team."  Defendant Barnes warned Plaintiff that if he wanted to "control the message" about why he was no longer in the position of men's rowing head coach, he should resign quietly.

45.

Knowing that no cause existed to support termination of the Employment Agreement, Plaintiff immediately retained counsel who contacted OSU to oppose the proposed termination of Plaintiff's Employment Agreement for cause.

46.

After almost two weeks had passed, during which time Defendant Barnes and OSU collaborated to come up with a justifiable reason supporting a "for cause" termination of Plaintiff's Employment Agreement, OSU, through counsel, reported in vague terms that Defendant Barnes wanted to terminate Plaintiff for cause based on a "consistent, year after year, reported pattern of bullying and favoritism on [Plaintiff's] team."  When confronted with the facts that Plaintiff had never been told of any such complaints and certainly no investigation into any such complaints had ever been conducted, OSU, through counsel, made up some different purported bases for the disciplinary discharge, then claiming that Plaintiff was actually being terminated for a pattern of safety concerns, anger issues, and using physical exercise as punishment.  OSU again stated that none of these (false) allegations would have to be made public if Plaintiff would agree to resign.

13 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

47.

Plaintiff responded to each of the alleged examples of misconduct with specific facts and documentation of their falsity. He conceded that OSU had the authority to terminate his Employment Agreement for no cause so that Defendant Barnes could proceed with this consolidation plan, but in doing so, OSU had to abide by the terms of the Agreement and pay Plaintiff's remaining salary.

48.

On July 25, 2025, OSU relayed a new basis for Plaintiff's termination. At that time, OSU claimed that Plaintiff and his assistant coaches had created, encouraged, and fostered a "bro-culture" on the men's rowing team.

49.

When Plaintiff refused to resign, Defendants Barnes and OSU prepared a Notice of Termination letter for Plaintiff. In that letter, dated August 12, 2025, OSU claimed that since 2021, Plaintiff had encouraged a culture of misogyny on his team, allowing females to be sexually harassed by male athletes, encouraging the harassment, and participating in the harassment. OSU informed Plaintiff that athletes had reported that he used foul terms such as "soft dick" when referring to his athletes, and OSU insinuated that Plaintiff himself was sexually inappropriate with his team. OSU accused Plaintiff of refusing to stop his assistant coaches from sexually harassing and bullying the athletes, describing the assistant coaches' behavior as "way worse."

50.

Every alleged basis of misconduct OSU set forth as purportedly supporting a just cause termination was false. The more salacious allegations were included in an effort to convince Plaintiff to resign so that the false and stigmatizing allegations set forth in the Notice of Termination would not become public.

///

14 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

51.

The allegations of misconduct relied on in the August 12, 2025, Notice of Termination spanned a period of four years – from 2021 through 2025. Yet, none of the alleged instances of misconduct had ever been the subject of an investigation, let alone discipline. According to OSU, it had known about these terminable offenses involving student-athletes engaged in by Plaintiff and his coaching staff for years; yet, it had never spoken to Plaintiff about them. To the contrary, after Defendant Barnes and OSU allegedly became aware of the majority of the identified misconduct, OSU entered into the 2024 Employment Agreement with Plaintiff, increasing his salary and extending the term of his employment.

52.

Upon being presented with these fabricated allegations as support for a "for cause" termination, Plaintiff demanded that OSU investigate the allegations and allow him to have reasonable access to the investigatory materials so that he could be heard on those charges at a meaningful time and in a meaningful manner.

53.

OSU refused to investigate the allegations of misconduct and refused to state the true reasons for Plaintiff's termination, instead (falsely) claiming that Plaintiff had waived his right to due process before his employment was taken from him.

54.

OSU made a meaningless offer to allow Plaintiff seven days to fully rebut the myriad of allegations against him, promising that this rebuttal, if received by August 19, 2025, would be considered before the final decision on his termination was made. However, Plaintiff knew nothing about the details of the allegations made against him because OSU refused to investigate. Regardless, the offer to allow Plaintiff to be heard on the charges against him was not at a meaningful time or in a meaningful manner because the decision to terminate

15 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

Notice of Removal - Exhibit A
Page 15 of 66

1   Plaintiff's employment for cause was made before the August 19, 2025, deadline he was

2   given to present his evidence.

3                                          55.

4           On August 19, 2025, the day Plaintiff's rebuttal was due for consideration before a

5   decision was made on his termination, Mike Eichler, the women's rowing team head coach,

6   asked Plaintiff's head assistant if he would stay on to be the men's assistant coach under his

7   leadership.  This is the same assistant coach who OSU described in Plaintiff's termination

8   letter as having engaged in "way worse" conduct over the prior four years.  As such, as of

9   August 19, 2025, Defendant Barnes had already offered Mike Eichler the position of head

10  coach over the consolidated men's and women's rowing teams.

11                                         56.

12          On August 20, 2025, OSU and Defendant Barnes issued a press release announcing

13  that the men's rowing team had been consolidated with the women's team under the

14  leadership of the women's head coach.

15                                         57.

16          Per the terms of the August 12, 2025, Notice of Termination Letter, Plaintiff was

17  terminated on August 19, 2025, with a retroactive effective date of August 12, 2025.

18                                         58.

19          The termination letter is a public document, issued by a public institution.  The

20  termination letter contained allegations of misconduct against Plaintiff that were false and

21  stigmatizing to his reputation.  Defendants did not offer Plaintiff a name-clearing hearing

22  after his termination was effective.

23                                    **DAMAGES**

24                                         59.

25          As a result of his termination for cause for alleged reasons that are stigmatizing to his

26  reputation, Plaintiff will not be able to find another coaching position of similar value and

16 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

prestige.  His reputation has been irreversibly damaged by the false allegations made about him in the termination letter, which is a public document.  Plaintiff intended to coach at OSU or a similar rowing program for the next 20 years, until age 69.  Conservatively assuming his base salary of $107,000 in 2025, adjusted for inflation at 3.29% for 20 years, Plaintiff has and will suffer lost wages in the amount of $3,169,330, reduced by reasonably anticipated alternative employment at a salary 50% less, for a total lost wages of $1,584,665; lost employer-contribution retirement benefit (6% of base salary) for a period of 20 years, for a total of $190,160; lost health insurance coverage in the amount of $2,792/month for 16 years (age 65) for a total loss of $536,064; lost incentive benefits in the amount of $8,000 per year, for a total of $160,000; lost travel benefits in the amount of $10,000 per year, for a total of $200,000; and lost instructional compensation opportunities in the amount of $10,000 per year, for a total of $200,000; for a total economic loss of $2,870,889, plus prejudgment interest at the legal rate of 9% running from the date each loss would be incurred through the date of judgment.

60.

As a result of Defendants' wrongful and intentional conduct described above, Plaintiff has suffered non-economic losses in the amount of $1,500,000 for his emotional distress, mental anguish, embarrassment and humiliation, stigma to his professional reputation, anxiety, and depression.

**FIRST CLAIM FOR RELIEF**

**AGAINST DEFENDANT OSU**

**(RETALIATION FOR ENGAGING IN PROTECTED**

**ACTIVITY UNDER ORS 659A.199)**

61.

Plaintiff incorporates paragraphs 1-60 above.

///

17 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

Notice of Removal - Exhibit A
Page 17 of 66

62.

Plaintiff's report to the EOA as described in paragraphs 19-33 above, constituted protected activity under ORS 659A.199, in that Plaintiff in good faith reported to the EOA information that Plaintiff believed was evidence of a violation of a state or federal law, rule or regulation.

63.

As described in paragraphs 19-33 above, Plaintiff further engaged in protected activity when he in good faith encouraged his student athletes to report to the EOA activity that he believed was evidence of a violation of a state or federal law, rule or regulation, and to continue reporting the information when EOA failed to act on the initial reports.

64.

Plaintiff's protected activity described herein was a substantial factor in Defendant OSU's decision to terminate Plaintiff's Employment Agreement and/or to allege that such termination was for good cause.

65.

As a result of Defendant OSU's taking adverse action against Plaintiff because of his protected activity, Plaintiff has suffered the economic and noneconomic damages set forth in paragraphs 59 and 60 above.

**SECOND CLAIM FOR RELIEF**

**AGAINST DEFENDANT OSU**

**(RETALIATION FOR OPPOSING UNLAWFUL**

**PRACTICE UNDER ORS 659A.030(G))**

66.

Plaintiff incorporates paragraphs 1-65 above.

67.

After Plaintiff reported to the EOA the conduct of an athlete described in paragraph 23 that he believed was evidence of a violation of a state or federal law, rule or

18 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

1   regulation, the EOA failed to take any action with regard to the student athlete. Plaintiff in

2   good faith believed that the EOA's failure to take any action to ensure the reporting female

3   student athletes and the non-binary student athlete who was the victim of the male athlete's

4   illegal behavior created a sexually harassing and discriminatory environment for the

5   reporting athletes and the victim.

6                                    68.

7         Plaintiff opposed the resulting creation and continuation of a sexually harassing and

8   discriminatory environment for the reporting athletes and the victim by removing the alleged

9   offender athlete from the men's rowing team's roster.

10                                   69.

11        Immediately after informing Defendant OSU that he had removed the male athlete

12  from the team, OSU commenced the process of termination of Plaintiff's employment.

13                                   70.

14        Plaintiff's action in opposing an illegal practice as described above was a substantial

15  factor in Defendant OSU's decision to terminate Plaintiff's Employment Agreement and/or

16  to purport to terminate that Agreement for good cause.

17                                   71.

18        As a result of Defendant OSU's retaliation against Plaintiff for opposing an illegal

19  practice, Plaintiff has suffered the economic and noneconomic damages set forth in

20  paragraphs 59 and 60 above.

21                       **THIRD CLAIM FOR RELIEF**

22                      **AGAINST DEFENDANT BARNES**

23            **(CAUSING RETALIATION FOR ENGAGING IN PROTECTED**

24              **ACTIVITY UNDER ORS 659A.030(G) AND/OR (F))**

25                                   72.

26        Plaintiff incorporates paragraphs 1-71 above.

19 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

73.

Pursuant to the Employment Agreement, Defendant Barnes was the final decision maker having authority to cause OSU to terminate Plaintiff's Employment Agreement.

74.

Either as the decision maker or, alternatively, in aid and abetment of OSU, the decision maker, Defendant Barnes caused Plaintiff's Employment Agreement to be terminated for cause in substantial part because Plaintiff in good faith reported information that he believed was evidence of a violation of a state or federal law, rule or regulation, and/or because Plaintiff opposed an illegal practice, all in the ways set forth above in the First and Second Claims for Relief.

75.

As a result of Defendant Barnes' actions described above, Plaintiff has suffered the economic and noneconomic damages set forth in paragraphs 59 and 60 above.

**FOURTH CLAIM FOR RELIEF**

**AGAINST DEFENDANT BARNES AND DEFENDANT OSU**

**(42 U.S.C. § 1983 – DUE PROCESS)**

76.

Plaintiff incorporates paragraphs 1-75 above.

77.

Plaintiff worked for OSU under the terms of an Employment Agreement that provided for his continued employment through August 31, 2026, or for payment of liquidated damages through that date, unless good cause existed for the termination of that Agreement. Because of this, Plaintiff had a recognizable property interest in his continued employment as the OSU men's rowing team head coach through August 31, 2026.

///

///

20 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

78.

As set forth above, Defendant Barnes caused OSU to terminate Plaintiff's employment on August 12, 2025. Before such termination could occur, Plaintiff was entitled to the procedural protections required by the Fourteenth Amendment to the United States Constitution. Specifically, he was entitled to notice of the charges against him on which his termination for cause was based, and an opportunity to be heard on those charges at a meaningful time and in a meaningful manner.

79.

Plaintiff was never notified of the true charges against him on which his termination was based. Rather, Plaintiff was notified of disparate, varied and changing charges as the alleged bases for his termination. None of the purported charges were the true reason for the termination and, as such, all were pretextual, intended to hide the true motivation for terminating Plaintiff's Employment Agreement for cause.

80.

Having never been notified of the true basis for his termination for cause, Plaintiff was deprived by Defendant Barnes of his right to be heard on those charges before a decision on termination for cause was made.

81.

Further, the purported opportunity to be heard offered by Defendant Barnes was constitutionally insufficient to protect Plaintiff's Fourteenth Amendment rights. As set forth above, Plaintiff's rebuttal to the charges allegedly supporting his termination for cause was due for presentation to Defendant Barnes on August 19, 2025. By that date, though, Mike Eichler, the women's rowing coach, had already accepted Defendant Barnes' offer of the position of head coach over the consolidated men's and women's rowing teams. Defendant Barnes had made the termination decision before Plaintiff had the opportunity to be heard, denying him the opportunity to be heard at a meaningful time and in a meaningful manner.

21 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

82.

Additionally, because the purported basis for Plaintiff's termination for cause included false and stigmatizing statements made in a public document that caused reputational harm, Plaintiff was entitled to the further constitutional protection of a name-clearing hearing.  The failure to provide the opportunity to engage in a name-clearing hearing is a separate and distinct violation of Plaintiff's right to due process.

83.

Defendant Barnes was identified in the Employment Agreement as OSU's decision maker with the authority to terminate Plaintiff's Employment Agreement.  As such, Defendant Barnes' actions as described herein constitute the policy and practice of OSU.  For the reasons described herein, that policy and practice of Defendant OSU violated Plaintiff's due process rights.

84.

As a result of Defendant Barnes' and OSU's violation of Plaintiff's right to due process, Plaintiff has suffered the economic and noneconomic damages set forth in paragraphs 59 and 60 above.

**FIFTH CLAIM FOR RELIEF**

**AGAINST DEFENDANT OSU**

**(BREACH OF CONTRACT)**

85.

Plaintiff incorporates paragraphs 1-84 above.

86.

Pursuant to the terms of the Employment Agreement, Plaintiff's employment could be terminated for cause only if he violated one or more of the provisions of Section 1.3 in such a manner that the misconduct constituted good cause for termination.

///

22 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

Notice of Removal - Exhibit A
Page 22 of 66

87.

As described above, Defendants' alleged "good cause" bases for termination of Plaintiff's Employment Agreement were all pretextual. The true reason(s) motivating the termination of Plaintiff's Employment Agreement did not provide good cause for that termination.

88.

Defendant OSU's termination of Plaintiff's Employment Agreement for good cause when no good cause supporting termination existed constituted a breach of the Employment Agreement.

89.

Plaintiff notified Defendant OSU several times that its action in terminating his employment for good cause when none existed was a breach of the Employment Agreement. Despite this notice, Defendant OSU persisted in the termination, failing to cure its breach.

90.

As a result of Defendant OSU's breach of the Employment Agreement, Plaintiff lost the full remaining value of his Employment Agreement. This value is estimated at $107,004 in base wages, $8,000 in incentive payments, $27,000 in health care benefits, $10,000 in paid travel benefits, $10,000 in additional education compensation opportunities, and $6,420 in employer matching retirement contributions, for a total of contract damages in the amount of $141,424.

**CLAIM FOR ATTORNEY'S FEES**

91.

Plaintiff is entitled to an award of his reasonable attorney's fees incurred in connection with his First, Second, Third, and Fourth Claims for Relief herein pursuant to ORS 659A.885 and 42 U.S.C. § 1988.

///

23 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

1

**DEMAND FOR JURY TRIAL**

2

92.

3

Plaintiff demands trial by jury.

4

\*        \*        \*

5

WHEREFORE, Plaintiff Gabriel Winkler prays that his Complaint be deemed good

6

and satisfactory and that judgment be awarded in his favor against Defendants as follows:

7

1.      On his First Claim for Relief against Defendant OSU, for economic damages

8

in the amount of $2,870,889, plus prejudgment interest at the legal rate of 9% running from

9

the date each loss would be incurred through the date of judgment; noneconomic damages in

10

the amount of $1,500,000, and his reasonable attorney's fees incurred herein;

11

2.      On his Second Claim for Relief against Defendant OSU, for economic

12

damages in the amount of $2,870,889, plus prejudgment interest at the legal rate of 9%

13

running from the date each loss would be incurred through the date of judgment;

14

noneconomic damages in the amount of $1,500,000, and his reasonable attorney's fees

15

incurred herein;

16

3.      On his Third Claim for Relief against Defendant Barnes, for economic

17

damages in the amount of $2,870,889, plus prejudgment interest at the legal rate of 9%

18

running from the date each loss would be incurred through the date of judgment;

19

noneconomic damages in the amount of $1,500,000, and his reasonable attorney's fees

20

incurred herein;

21

4.      On his Fourth Claim for Relief against Defendants Barnes and OSU, for

22

economic damages in the amount of $2,870,889, plus prejudgment interest at the legal rate of

23

9% running from the date each loss would be incurred through the date of judgment;

24

noneconomic damages in the amount of $1,500,000, and his reasonable attorney's fees

25

incurred herein;

26

///

24 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1       5.      On his Fifth Claim for Relief against Defendant OSU, for contract damages in

2  the amount of $141,424, plus prejudgment interest; and

3       6.      For all other relief the court deems just and equitable.

4      DATED this 20th day of October, 2025.

5                        HUTCHINSON COX

6

7               By:   s/Andrea D. Coit
                       Andrea D. Coit, OSB #002640

8                    acoit@eugenelaw.com
                    Jonathan M. Hood, OSB #133872

9                    jhood@eugenelaw.com
                    Telephone:   541-686-9160

10                 Facsimile:    541-343-8693
                    Of Attorneys for Plaintiff

11                 Trial Attorney: Andrea D. Coit

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

25 – PLAINTIFF'S COMPLAINT

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

## Employment Agreement and Notice of Appointment for Head Coach

This Employment Agreement and Notice of Appointment for Head Coach ("Agreement") is made between Oregon State University ("University") and Gabe Winkler ("Coach") and is effective September 1, 2021 (the "Effective Date"). As of the Effective Date of this Agreement, this Agreement replaces the Employment Agreement and Notice of Appointment for Head Coach between the parties dated August 3, 2018 by last signature.

1.    POSITION, DUTIES, AND RESPONSIBILITIES

1.1    **Employment of Coach**. Subject to the conditions stated in this Agreement, University employs Coach as a member of the coaching staff of University in the Department of Intercollegiate Athletics ("Athletic Department"). Coach shall have duties and administrative responsibilities as head coach of the University's men's rowing team (the "Team"). Coach agrees to and accepts the terms and conditions for employment provided in this Agreement and described in the Coach's position description, which may change from time to time during the period of this Agreement at the discretion of the Vice President and Director of Athletics (the "Director"), and which is on file in the Athletic Department and in the Office of Human Resources.

1.2    **Obligations of Coach**. Coach promises to fulfill the following obligations:

(a)    Devote Efforts.  Devotion of Coach's best, ongoing, and exclusive efforts to performance of all duties and responsibilities contemplated by the Agreement, including dedication of focused, ongoing attention, enthusiasm and efforts to coaching duties, student athletes on the Team, and the success and furtherance of University's athletic program.

(b)    Support and Supervise and Properly Treat Student Athletes. Encouragement and support of student athletes on the Team in regard to personal, physical, and intellectual development, activities, and achievements, including an emphasis on each student athlete's completion of an undergraduate degree program. Engaging in (and assuring every coach under Coach's supervision is engaging in) fair, safe, and responsible treatment of student athletes on the Team and avoiding behavior that could, in any way, jeopardize a student athlete's health, safety, welfare, or that could otherwise cause harm or risk causing harm to a student athlete. Being knowledgeable of, and orienting student athletes on the Team regarding applicable National Collegiate Athletic Association ("NCAA") legislation, Pac-12 Conference (the "Conference") rules, University policies and standards, and Oregon and federal law including criminal law. Engaging in reasonable and appropriate supervision of student athletes on the Team to promote behavior that is consistent with such NCAA legislation, Conference rules, University policies and standards, and Oregon and federal law.

(c)    Adhere to Budget.  Execution of these duties within the Coach's allocated budget.

(d)    Comply with Policies. Compliance with (i) all applicable policies and procedures set forth by the Director (including without limitation the recruiting of prospective student athletes and the eligibility of current student athletes), and (ii) all applicable University policies and standards.

Notice of Removal - Exhibit A
Page 26 of 66

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

(e) <u>Comply with NCAA, Conference Rules</u>. Compliance with rules, regulations, and advisory opinions of the NCAA and of the Conference, as presently in effect or as amended from time to time during the Term of the Agreement. Coach acknowledges that Coach has reviewed the conduct requirements for athletics personnel in NCAA Bylaw 11.1 and agrees to comply. Coach is responsible for ensuring all of the assistant coaches, administrators, and any other personnel subject to Coach's control or supervision comply with the above policies, rules, and regulations. Coach agrees to cooperate fully with any investigation by the University, Conference, or the NCAA. Coach's obligation to cooperate survives termination or expiration of this Agreement.

(f) <u>OGEC Compliance</u>. Compliance with the requirements of Oregon's Government Ethics law and the instructions and requirements of the Oregon Government Ethics Commission. Coach shall conduct all services to the University in an ethical and legal manner.

(g) <u>Responsibility to Cooperate</u>. In compliance with NCAA Bylaw 11.2.1(a) and 19.2.3, Coach agrees to cooperate fully in the infractions process, including the investigation and adjudication of any case involving allegations of infractions. Coach's obligation to cooperate survives termination or expiration of this Agreement. Such cooperation includes, without limitation, cooperation with any internal University investigation, with NCAA enforcement staff, the NCAA Complex Case Unit, the NCAA Committee on Infractions, the NCAA Independent College Sports Adjudication Panel and the NCAA Infractions Appeals Committee in order to further the objectives of the NCAA, its infractions program, and its independent alternative resolution program. As set forth in NCAA Bylaw 19.2.3, "full cooperation" includes, but is not limited to:

    (1) Affirmatively reporting instances of noncompliance to the NCAA via standard University process (e.g. reporting to Director or Compliance Office) in a timely manner and assisting in developing full information to determine whether a possible violation has occurred and the details thereof;

    (2) Timely participation in interviews and providing complete and truthful responses;

    (3) Making a full and complete disclosure of relevant information, including timely production of materials or information requested, and in the format requested;

    (4) Disclosing and providing access to all electronic devices used in any way for business purposes;

    (5) Providing access to all social media, messaging and other applications that are or may be relevant to the investigation; and

    (6) Preserving the integrity of an investigation and abiding by all applicable confidentiality rules and instructions.

(h) <u>Report Outside Income</u>. Coach shall provide a report to the Director at least once annually of all athletically related income or benefits from sources outside the University, including, but not limited to, income from annuities, sports camps, housing benefits, complimentary ticket sales, television and radio programs, and endorsement or consultation contracts

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

with athletic shoe, apparel, or equipment manufacturers. Reports shall be made at the direction of, and on forms provided by the Director or designee. The Director or designee shall forward reports to the President and a copy shall be retained in the faculty personnel file of the Coach. Coach agrees that the approval of all athletically related income and benefits shall be consistent with the University's policy related to outside income and benefits applicable to all full-time employees.

(i) Comply with University Agreements. Compliance with any University agreement with any manufacturer, seller, or vendor of athletically related shoes, equipment, apparel and any other athletically related products, provided the terms of such agreement are reasonable and consistent with applicable industry practice.

(j) Promote Academic Excellence. Dedication to the academic excellence of the student athletes by ensuring student athletes on the Team are in maximum pursuit of degree programs and in compliance with NCAA academic standards, including, but not limited to, the NCAA Division I Academic Reform Initiatives.

(k) Personnel. Supervision of job performance and all other incidents of employment, including assessing job performance and reporting suspected rules violations of assistant coaches and other personnel, if Coach is administratively responsible for the supervision of such individuals at any time during the Term of this Agreement.

(l) Develop Programs. Development of programs and procedures with respect to the evaluation, recruitment, training and coaching of student athletes that both foster successful competition and promote the welfare and academic achievement, including degree completion, of student athletes.

(m) Fulfill Responsibilities. Fulfillment of all job responsibilities in a timely, thorough, constructive, cooperative, positive, and professional manner, including responsibility for appraisals, administrative processes, and attendance at all meetings specified by the Director or the Director's designee.

(n) Receive Approval from Director for the Team's Schedule. The Director has the sole authority to arrange and/or approve the Team's schedule for each season as well as the rescheduling of any contests; however, the details of the total schedule will be arranged through close coordination and collaboration with Coach and the Director to ensure that the Team meets and maintains the University's overall objectives in intercollegiate athletics.

1.3 **Prohibitions**. Coach shall not:

(a) Engage in Business. Accept any employment outside the University, seek any employment contrary to or inconsistent with existing University contracts, engage in any business transactions or commerce for compensation, participate in any coaching clinics or camps, endorse any products in any form, or appear for payment on any radio or television programs, without having first notified and secured the written approval of the Director and the President or designee. Notwithstanding anything to the contrary in University's Conflict of Commitment Policy, the Director may approve a request to engage in outside

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

activities upon a determination that the activity will not result in a conflict of commitment to Coach's University duties. Coach shall not take any action inconsistent with University's obligations made known to Coach under any agreements between the University and any manufacturer, seller, or vendor of athletically-related shoes, equipment, apparel and any other athletically related products.

(b) <u>Commit a Violation</u>. Engage in any conduct, whether related to performance of duties under this Agreement or not, that constitutes (as defined by the NCAA) a Level I or II violation or repetitive Level III violations of NCAA rules, bylaws, or regulations; or a significant and/or repetitive violation(s) of University policies or standards; Conference rules, legislation, regulations, or advisory opinions; of federal or state laws, regulations or agency advisory opinions; of municipal ordinances; or of ethical principles applicable to higher education coaching positions.

(c) <u>Condone a Violation of NCAA Legislation, Conference Rules, University Policy, Oregon or Federal Law Including Criminal Law</u>. Condone a violation of NCAA legislation, conference rules, University policy, Oregon or federal law including criminal law (any of which is a "Violation") by a member of the Team's coaching staff or any person under Coach's supervision and direction, including a student athlete. For purposes of this Section "condone" means: (a) Coach's actual knowledge of and complicity in a Violation by a member of the Team's coaching staff or any person under Coach's supervision and direction, including a student athlete; or (b) Coach's failure to report a known Violation by a member of the Team's coaching staff or any person under Coach's supervision and direction, including a student athlete, to the Director within a reasonable amount of time. For purposes of this Section a "known Violation" means a Violation the Coach becomes aware of, or has reasonable cause to believe, is taking place or may have taken place.

(d) <u>Receive Other Benefits</u>. Receive, either directly or indirectly, compensation, remuneration, or any other benefit from any source other than University, for activities related to Coach's professional standing or employment with University, including but not limited to (i) income from annuities related to Coach's position with University, (ii) sports camps or private lessons, (iii) television or radio programs, (iv) endorsement or consultation contracts, or (v) income from speeches, appearances, or written materials, without obtaining, on an annual basis, prior, written consent of the Director, which consent will not be unreasonable withheld.

(e) <u>Discredit University or Bring Public Embarrassment to University</u>. Engage in any business transactions or commerce, appear on any radio or television program or in any public forum, or make statements to the media or in any public forum that may bring undue criticism or discredit to University. Commission of or participation in by Coach of any act, situation, or occurrence or any conduct which, in University's judgment, brings Coach and/or University into public disrepute, embarrassment, contempt, scandal or ridicule or which constitutes a substantial failure to perform in good faith the duties required of Coach in Section 1.2 herein or failure by Coach to conform Coach's personal conduct to conventional standards of good citizenship, with such conduct offending prevailing social mores and values and/or reflecting unfavorable upon University's reputation and overall primary mission and objectives, including but not limited to, acts of dishonesty,

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

misrepresentation, fraud or violence that may or may not rise to a level warranting criminal prosecution by the relevant authorities.

(f) <u>Enter Into Agreements</u>. Enter into any oral or written agreement, letter of understanding, contract or any other arrangement that seeks to bind, obligate, or involve the University, the Athletic Department, or any other component of the University in any transaction whatsoever. All such agreements will be disclaimed by University, unless Coach submits any contemplated arrangement to the Director for development, processing, and approvals, if warranted;

(g) <u>Fail to Report to Title IX Coordinator</u>. Fail to immediately report to the University's Title IX Coordinator any alleged violations of the University's Sexual Misconduct and Discrimination Policy (including but not limited to, sexual misconduct, sexual harassment, sexual assault, sexual exploitation, intimate partner violence, and stalking) that involve any student, faculty, or staff, or that occurred during a University sponsored activity or event, or that occurred on University property. Any emergency situation should immediately be reported to 911 and/or law enforcement; or

(h) <u>Fail to Fulfill Duties</u>. Negligently or intentionally fail to fulfill duties or conditions described in Section 1.2 to the reasonable satisfaction of the Director.

2.  TERM

2.1 **Duration**. Coach's employment under this Agreement is for a fixed term period beginning the Effective Date and ending August 31, 2024 (the "Term"). Each year of the Agreement ("Contract Year") is a consecutive period of time that may be more or less than 12 months, and is defined as follows:

| | | | |
|---|---|---|---|
| Contract Year 1 | September 1, 2021 | - | August 31, 2022 |
| Contract Year 2 | September 1, 2022 | - | August 31, 2023 |
| Contract Year 3 | September 1, 2023 | - | August 31, 2024 |

2.2 **Conditions**. This Agreement is subject to the rules, standards and policies of the University except as otherwise provided in this Agreement. Coach's employment under this Agreement is contingent on University determining Coach is authorized to work in the United States for University.

3.  COMPENSATION, BENEFITS, AND INCENTIVES

3.1 **Annual Base Salary**. University shall pay Coach on a monthly basis in substantially equal installments consistent with University payroll practices and subject to all applicable withholding based on the following annual amounts:

| | |
|---|---|
| Contract Year 1 | $87,000 |
| Contract Year 2 | $92,004 |
| Contract Year 3 | $97,008 |

Notice of Removal - Exhibit A
Page 30 of 66

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

The annual base salary may be increased by the Director in accordance with established University procedures.

3.2  **Benefits**. Coach is employed by University as an FLSA exempt employee and is not eligible to receive overtime compensation. Coach is eligible to participate in the general employee benefit programs available to other University employees, subject to the rules, standards, and policies of the University.

3.3  **Waiver of Vacation Leave**. As a condition of employment under this Agreement, Coach waives any right Coach may have to vacation leave under University Policy 580-021 or any other applicable law or policy. However, University recognizes that in order to fulfill Coach's job responsibilities, Coach will likely work long hours for sustained periods of time beyond a typical professional work week, and that there will be periods when the duties of the position will not require Coach to work a typical professional work week.

3.4  **Incentive Compensation for Pac-12 Conference Athletic Achievement**.

(a) University agrees to pay Coach the following specified amounts in any year in which the Team achieves the following and Coach is coach of the Team at the time of the event:

(1)  Finish in the top 3 in the Pac-12 Conference - One half one month's base salary

(2)  Finish in the top 2 in the Pac-12 Conference - One month's base salary

(b) These amounts are not cumulative. The maximum amount Coach is eligible to receive under this Section 3.4 in any year is one month's base salary.

(c) Payment will be made no later than June 30 of the year in which Coach is entitled to payment under this Section 3.4.

3.5  **Incentive Compensation for Intercollegiate Rowing Association Athletic Achievement**.

(a) University agrees to pay Coach the following specified amounts in any year in which the Team achieves the following for any year in which Coach is coach of the Team at the time of the event:

(1)  Finish in the top 10 at the IRA Championship          $3,000

(2)  Finish in the top 6 at the IRA Championship          $5,000

(b) These amounts are not cumulative. The maximum amount Coach is eligible to receive under this Section 3.5 in any year is $5,000.

(c) Payment will be made no later than June 30 of the year in which Coach is entitled to payment under this Section 3.5.

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

3.6 **Incentive Compensation for Academic Achievement.**

    (a) University agrees to pay to Coach the following specified amounts in any academic year in which the Team achieves the following and Coach is coach of the Team at the time of the event:

        (1)    Team has a 3.1 or higher team grade point average  $3,000

    (b) For the purposes of this Section 3.6 the academic year is September 1 to June 30.

    (c) Payment will be made no later than June 30 of the year in which Coach is entitled to payment under this Section 3.6.

3.7 **Compensation for OSU sponsored instructional events**. If Coach participates in an OSU sponsored camp, clinic or similar instruction event, payment shall be made on an overload compensation basis. The amount of payment is to be determined at the time the budget for the camp is approved in accordance with Athletic Department policies.

3.8 **Tickets**. Coach will receive tickets to Athletic Department games in the amounts and manner provided for by Athletic Department policies.

3.9 **Family Travel**. Spouse and family travel to limited Athletic Department competitions may be provided in accordance with provisions in the Athletic Department Policies and Procedures Manual.

3.10 **Tax**. Coach understands that these benefits, if received, will be reported and are likely taxable.

4. TERMINATION

4.1 **Termination by University for Cause.**

    (a) Employment under this Agreement may be terminated prior to the end of the Term, or sanction imposed, if Coach fails to faithfully and diligently carry out all duties and responsibilities described in this Agreement or violates any of the proscriptions against conduct specified in Section 1.3.

    (b) Coach waives any rights Coach may have to a hearing under University Policies 576-050 and 580-021.  Coach shall, however, be notified of the grounds for termination being considered by University and shall have an opportunity to present a statement of denial, explanation and/or extenuation before such termination is finalized.

    (c) The decision whether to terminate employment under this Agreement for cause shall be made by the Director or the President. In reaching a decision whether to terminate, or impose a lesser discipline, the Director or President will take into consideration the severity of the actions(s) or omission(s) that constitute the cause for termination.

    (d) In the event University terminates employment under this Agreement for cause prior to the end of this Agreement, all obligations of University to make further payments and/or

Notice of Removal - Exhibit A
Page 32 of 66

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

to provide other consideration under this Agreement shall cease as of the end of the month in which such termination occurs, provided that Coach will be entitled to earned but unpaid compensation and reimbursement for previously incurred and approved expenses. University is not liable to Coach for any loss of collateral business opportunities or any other benefits, perquisites or income.

4.2    **Termination by University Without Cause.**

(a)    At any time after commencement of this Agreement, University may terminate employment under this Agreement without cause by giving written notice to Coach. Coach waives any right to a hearing under University Policies 576-050 and 580-21. The termination shall become effective no earlier than 15 days after receipt of the written notice. In the event of termination under this Section 4.2, Coach agrees to accept liquidated damages, as specified in this Section 4.2, in complete satisfaction of and as payment in full for all obligations, if any, due and owing by University to Coach under this Agreement. Coach understands and agrees that if employment under this Agreement is terminated without cause, Coach shall not be entitled to any benefits or compensation other than that set forth in this Section 4.2.

(b)    Severance. In the event of termination under this Section 4.2, as liquidated damages, University shall pay Coach the amount of Coach's annual base salary (as set out in Section 3.1) that would be due over the remaining Term of this Agreement if it had not been terminated, payable in substantially equal monthly installments, per usual payroll procedure and timing and subject to all applicable withholdings, until the earlier of 24 months after the date of termination or the date on which this Agreement would have expired under Section 2.1, provided, however, that any such payments scheduled to occur in the first three months following Coach's termination of employment shall not be paid until the last day of the third month after the date of termination.

(c)    Deferred Compensation.

(1)    If, on the date of termination under this Section 4.2, more than 24 months remain in the Term, Coach shall be entitled to receive payment of deferred compensation in accordance with Section 457(f) of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"). Such deferred compensation shall consist of payment to Coach of Coach's annual base salary (as set out in Section 3.1) in substantially equal monthly installments, during the period beginning on the 25th month after the date of termination and ending on date on which this Agreement would have expired under Section 2.1. Tax withholding and reporting relating to the payments described in this Section 4.2(c)(1) shall be made in accordance with the applicable provisions of the Internal Revenue Code.

(2)    If it is reasonably determined by University that some or all of the monthly payments to be made to Coach pursuant to Section 4.2(c)(1) would be taxable to Coach prior to their scheduled payment dates, then, on the last day of the third month after the date of termination, University shall make a single lump sum payment to Coach in an amount equal to the Estimated Tax Amount, subject to all applicable withholdings. For this purpose, the "Estimated Tax Amount" means the

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

amount that University reasonably determines, based on supplemental tax rates, is necessary for Coach to satisfy all of Coach's applicable federal, state and local income and employment tax obligations on amounts to be paid to Coach pursuant to Section 4.2(c)(1) that are taxable in the calendar year of termination rather than in subsequent years in which the scheduled payment dates fall. The Estimated Tax Amount shall be repaid to University by Coach in equal or substantially equal monthly payments over the time period during which Coach is to receive payments pursuant to Section 4.2(b). Such repayment by Coach shall be accomplished through the reduction by University of each monthly payment to be made under Section 4.2(b) by an amount equal to the monthly amount determined pursuant to the preceding sentence of this Section 4.2(c)(2); any such reduction shall be applied after the reduction for Compensable Services as described in Section 4.2(d). If, for any reason under this Agreement, the payments to be made to Coach by University under Section 4.2(b) end prior to the time that the Estimated Tax Amount has been fully repaid, then Coach shall repay the remaining balance of the Estimated Tax Amount to University in a single lump sum payment on or before the date that Coach's personal federal income tax return is due for the tax year during which such payments under Section 4.2(b) end.

(d)   Notwithstanding the severance and deferred compensation payment provisions, Coach agrees to mitigate University's severance and deferred compensation payment obligation by making reasonable and diligent efforts to obtain employment or engage in other compensable activities.  If at any time during the period that University is obligated to make severance or deferred compensation payments to Coach ("Post-Termination Payment Period"), Coach becomes entitled to receive from a third party compensation or remuneration for work, services or other activity whether reportable on IRS Form W-2, 1099, or K-1 (in the case of K-1 in connection with a trade or business in which Coach materially participates) (collectively, "Compensable Services"), Coach shall notify University in writing within 15 days of becoming so entitled and shall include the identity of the payor, the nature of the Compensable Services and the compensation or remuneration Coach will be entitled to receive at any time for Compensable Services to be performed by Coach during the Post-Termination Payment Period. University's obligation to make severance or deferred compensation payments under this Section 4.2(d) shall cease immediately upon Coach engaging in Compensable Services unless the compensation or remuneration Coach will be entitled to receive at any time from the third party for Compensable Services to be performed during the Post-Termination Payment Period is less, when prorated on a monthly basis over the remainder of the Post-Termination Payment Period ("Prorated Monthly Third-Party Payment"), than University's monthly severance or deferred compensation payment obligation.  In the event that such Prorated Monthly Third-Party Payment is less than University's monthly severance or deferred compensation payment obligation, University's monthly severance and deferred compensation payment obligation shall be reduced beginning with the month following Coach's commencement of performance of Compensable Services by an amount equal to the Prorated Monthly Third-Party Payment. If, however, Coach does not notify University of the Compensable Services within the 15 day period University shall not be liable for any further payments under this Section 4.2.

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

(1)   In addition to the written notice Coach is required to provide University upon ~~his~~ commencement of Compensable Services, during the Post-Termination Payment Period Coach shall provide annual written certifications to University regarding compliance with Coach's obligations to University under Section 4.2(d).  During the Post-Termination Payment Period, within 30 days after Coach has filed Coach's annual individual income tax return (IRS Form 1040), but not later than November 15 each year,  Coach shall provide University Coach's dated and signed statement certifying that as of the date of such certification Coach is in full compliance with the provisions of Section 4.2(d) of this Agreement and has provided University on a timely, complete and accurate basis all information regarding Compensable Services required by Section 4.2(d).  Additionally, within 30 days after University has requested in writing from Coach during the Post-Termination Payment Period copies of relevant tax records confirming Coach's compliance with Section 4.2(d) (which may include a copy of Coach's IRS Form 1040 for any years during the Post-Termination Payment Period and any Forms W-2, 1099 and K-1 reporting amounts includable on such IRS Form(s) 1040), Coach shall provide such documents to University. University may not request copies of such tax records more than once each calendar year, and Coach shall not be required to provide University the same records for a particular calendar year more than once.

(2)   If during the Post-Termination Payment Period University's severance payment obligation has been eliminated or reduced due to Coach's providing Compensable Services, and a change in circumstances occurs such that the information regarding Compensable Services that Coach previously reported to University is no longer accurate or complete, within 15 days after such change in circumstances Coach shall notify University in writing and provide details of such change in circumstances (including update of information previously reported to University regarding Compensable Services). Beginning with the month following such updated written notice from Coach, University's monthly severance or deferred compensation payment to Coach (as applicable) shall be increased or reduced as necessary to reflect any new amount of Prorated Monthly Third-Party Payment.

(e)   Coach agrees that as a condition of receiving any severance or deferred compensation pay as set forth in this Section 4.2, except for compensation, benefits or expense reimbursement accrued prior to the effective date of termination, Coach must execute a general release of all claims substantially in the form of attached Exhibit A ("Release"). Coach must execute and return the Release to the University within twenty-one (21) days of the date on which the University delivers the Release to Coach. The Release will include, but not be limited to, any and all claims and causes of action based on any law, statute, constitution, or University Policy or Standard, or based on contract, tort, or equity or any other legal principle or claim, including, without limitation, any state, federal law or local ordinance prohibiting discrimination, harassment or retaliation in employment, any claim for wrongful discharge in violation of public policy, unjust enrichment, promissory estoppel or detrimental reliance, defamation, intentional or negligent infliction of emotional distress, negligence in any action, breach of express or implied contract, and any violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family Medical Leave Act ("FMLA"), the Oregon Family Leave Act ("OFLA"), the Age Discrimination in Employment Act ("ADEA"), the Older Worker's Benefit Protection Act,

Notice of Removal - Exhibit A
Page 35 of 66

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

and ORS chapters 652, 653, and 659A, or any other state or federal statute or regulation or local rule or ordinance based on any act or omission prior to the execution of the Release. Upon signing and returning the Release to the University, Coach will have a seven (7) day period in which to revoke the Release. If Coach fails to provide the University with a signed Release within 21 days of Coach's receipt, or if Coach signed the Release within the 21 day period but then revokes the Release within the seven (7) day revocation period, severance and deferred compensation payments under this Section 4.2 shall not continue and become forfeited.

(f)    In the event of termination under this Section 4.2, Coach agrees not to apply for unemployment compensation.

(g)    Coach's compensation under this Section 4.2 is not subject to anticipation, alienation, transfer, assignment, pledge, encumbrance, attachment or garnishment by Coach's creditors or by a creditor of any successor, assignee or beneficiary of Coach.

**4.3    Termination by University for Discontinuation of Sport.**

(a)    In the event University decides to discontinue the Team's sport, University may terminate Coach's employment under this Agreement by giving 60 days written notice to Coach, such termination to become effective no earlier than 60 days after University's delivery of such written notice.

(b)    In the event University terminates Coach's employment under this Agreement for discontinuation of the Team's sport prior to the end of the Agreement, all obligations of University to make further payments and/or to provide other consideration under this Agreement shall cease as of the end of the month in which such termination occurs, provided that Coach will be entitled to earned but unpaid compensation and reimbursement for previously incurred and approved expenses. University shall not be liable to Coach for any loss of collateral business opportunities or any other benefits, perquisites or income.

**4.4    Financial Emergency.** Notwithstanding anything to the contrary in this Agreement, in the event (i) Athletic Department projected or actual revenues are reduced by at least 10% for a fiscal year or over multiple fiscal years due to any act of God; natural disaster; fire; war; riot or civil commotion; pandemic or epidemic; lockout, strike or other labor dispute; public health emergency; NCAA directive; government order; failure of technical facilities; failure or delay of transportation facilities; or other cause of similar or different nature  beyond the control of the University, or (ii) University's President validates a state of financial emergency for the Athletic Department, University may, without additional consideration, terminate, reduce FTE, implement a temporary leave without pay,  temporarily reduce incentive compensation, or temporarily reduce Coach's Annual Base Salary. If University implements FTE or salary reduction programs for other employee groups, Coach's FTE or base salary reductions will be up to but no more than those reductions implemented by University. In the event of termination under this Section 4.4, all obligations of University to make further payments and to provide other consideration under this Agreement shall cease as of the end of the month in which such termination occurs, provided that Coach will be entitled to earned but unpaid compensation and reimbursement for previously incurred and approved expenses. University

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

is not liable to Coach for any loss of collateral business opportunities or any other benefits, perquisites or income

4.5    **Termination by Coach**.

   (a) Coach may terminate employment under this Agreement for any reason by giving 15 days written notice to University, such termination to become effective no earlier than 15 days after University's receipt of such written notice.

   (b) University has the option, in its sole discretion, to make Coach's termination effective at any time prior to the end of such notice period as long as the University pays Coach all compensation to which Coach is entitled up through the last day of the 15 day period. Thereafter all obligations of University cease except for University's obligation to pay Coach's earned but unpaid compensation and reimbursement for previously incurred and approved expenses.

   (c) Failing to terminate employment with the University before beginning employment outside the University, without receiving required written approval under Section 1.3(a) violates this Agreement. University at its option may treat Coach's beginning such other employment as Coach's termination of employment under this Section.

4.6    **Liquidated Damages**.

   (a) The parties have bargained for and agreed to, and consequently are bound by, the liquidated damages provision in Sections 4.2, giving consideration to the fact that Coach may lose certain benefits, supplemental compensation or outside compensation relating to Coach's employment at University, which damages are extremely difficult to determine with certainty.

   (b) The parties agree that payment of such liquidated damages constitutes adequate and reasonable compensation to Coach because of termination without cause by University. The foregoing shall not be, nor be construed to be, a penalty.

4.7    **University Property**. Any property (including without limitation all equipment, documents, records, and keys) furnished to or created by Coach incident to Coach's employment belongs to University and shall be promptly returned to University upon termination of this Agreement for any reason. This provision survives termination of this Agreement.

4.8    **Termination by Death or Disability**. Notwithstanding any other provision of this Agreement, employment under this Agreement shall terminate automatically if Coach dies, or becomes totally or permanently disabled as defined by University disability insurance, the rules of the Oregon Public Employees Retirement System or within the meaning of the federal Social Security Administration regulations, so that the Coach's physical or mental incapacity is of a nature that prevents Coach from performing Coach's duties under this Agreement. No severance or deferred compensation payments set forth in Section 4.2 shall be due in the event of any such termination. This Section does not terminate University's obligation to make severance or deferred compensation payments under Section 4.2 if University has

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

already terminated this Agreement without cause under Section 4.2 prior to the time Coach dies or becomes totally or permanently disabled.

4.9     **Other Disciplinary Actions**. The University may also, without limiting University's rights to terminate Coach's employment for cause, take other disciplinary or corrective action short of termination for cause in the event Coach is found to be in violation of University Policy 580-021, Pac-12 or NCAA bylaw, constitutional provision, governing law, rule or regulation. Coach will be subject to disciplinary or corrective action as determined by the Director, the President or the President's designee, the Pac-12 Conference, and/or the NCAA Committee on Infractions.  Depending on the violation, Coach may be given a reprimand, assessed a fine (of a day's pay or more) or suspended (with or without pay).  Coach waives any rights Coach may have to receive written charges or to have a hearing under University Policies 576-050 and 580-021. Coach shall, however, be notified of the grounds for imposition of sanctions, and shall have the opportunity to present a statement of denial, explanation and/or extenuation before the sanction is finalized.  Coach may also be subject to termination for cause under Section 4.1, by University, based on violations described in this Section 4.9.

5.     UNIVERSITY PROMOTION

5.1     **University Promotion**. Coach agrees University may use Coach's name, image and likeness to advertise, promote and/or raise funds for the University, its intercollegiate athletic programs and its soccer programs.

6.     TAX ADVICE

6.1     **Tax Advice**. University will not provide tax advice to Coach or Coach's beneficiary regarding the tax effects of this Agreement. University encourages Coach and Coach's beneficiary to consult with their own tax advisors concerning the federal, state, and local tax effects of this Agreement. This Agreement is intended to comply with the requirements of Sections 409A and 457(f) of the Internal Revenue Code and, to the maximum extent permitted by law, shall be administered, operated and construed consistent with this intent. Any reimbursements or in-kind benefits provided under this Agreement that are subject to Section 409A of the Internal Revenue Code shall be made or provided in accordance with the requirements of Section 409A of the Internal Revenue Code, including, where applicable, the requirements that (a) any reimbursement is for expenses incurred during Coach's life, but in no event later than the expiration of the term of this Agreement, (b) the amount of expenses eligible for reimbursement, or in-kind benefits provided, during a taxable year may not affect the expenses eligible for reimbursement, or in-kind benefits to be provided, in any other taxable year, (c) the reimbursement of an eligible expense will be made no later than the last day of the taxable year following the taxable year in which the expense is incurred, and (d) the right to reimbursement or inkind benefits is not subject to liquidation or exchange for another benefit.

7.     MISCELLANEOUS

7.1     **Technology Transfer**. Coach acknowledges that the University has a Technology Transfer program that requires employees as a condition of employment to assign to the University

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

rights to any invention or improvements in technology, including software, developed using University facilities, personnel, information, or other University resources.

7.2 **Severability**. If any provision of this Agreement is determined to be void, invalid, unenforceable or illegal for any reason, it shall be ineffective only to the extent of such prohibition and the validity and enforceability of all the remaining provisions shall not be affected thereby.

7.3 **Entire Agreement; Modification**. This Agreement constitutes the entire agreement between the parties on the matters expressed in this Agreement. There are no understandings, agreements, or representations, oral or written, not specified herein with respect to the terms and conditions of Coach's employment with University. No waiver of an obligation under this Agreement is effective unless it is in writing and signed by the party granting the waiver. No failure or delay in exercising any right or remedy, or in requiring the satisfaction of any condition under this Agreement operates as a waiver or estoppel of any right, remedy or condition.

7.4 **Choice of Law**. The laws of the State of Oregon (without giving effect to its conflict of laws principles or laws) govern all matters arising out of or relating to this Agreement. Any party bringing a legal action or proceeding against the other party arising out of or relating to this Agreement shall bring the legal action or proceeding in the Circuit Court of Oregon for Benton County.

7.5 **No Third Party Beneficiaries**. University and Coach are the only parties to this Agreement and are the only parties entitled to enforce its terms. Nothing in this Agreement gives, is intended to give, or will be construed to give or provide, any benefit or right, whether directly, indirectly, or otherwise, to third persons unless such third persons are individually identified by name herein and expressly described as intended beneficiaries of the terms of this Agreement.

Each party is signing this Agreement on the date stated opposite that party's signature to be effective as of the Effective Date.

Agreed to:

OREGON STATE UNIVERSITY

By: *S. Scott Barnes*                                    9/14/2021 | 13:24:50 PDT
S. Scott Barnes, Vice President/Director of Athletics   Date

By: *Richard Settersten*                                9/23/2021 | 08:39:52 PDT
Richard Settersten, Vice Provost for Faculty Affairs    Date
Appointing Authority

Notice of Removal - Exhibit A
Page 39 of 66

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

COACH

By: _G W_____    9/22/2021  |  08:58:10 PDT
     Gabe Winkler                                 _____
                                                  Date

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

**EXHIBIT A**

Release of Claims

This Release of Claims ("Release") is entered into by [NAME] ("Coach").

BACKGROUND

A.  Coach was employed by Oregon State University ("University") as [TITLE/TEAM] in the University's Athletic Department.

B.  University has terminated Coach's employment.

C.  Coach and University are parties to the Employment Agreement and Notice of Appointment for [TITLE] dated [DATE] by last signature under which Coach is employed as an [TITLE/TEAM] at the University (the "Employment Agreement").

RELEASE

1.  <u>Release of Claims by Coach</u>.  (a) For and in consideration of University providing severance and deferred compensation payments in accordance with Section 4.2 of the Employment Agreement, Coach and Coach's heirs, assigns, and executors hereby release and discharge the University from all claims Coach may have against the University prior to the execution of this Release.  Without limitation, Coach agrees to release the University from any and all claims and causes of action based on any law, statute, constitution, or University policy or Standard, or based on contract, tort, or equity or any other legal principle or claim, including, without limitation, unjust enrichment, promissory estoppel, defamation, intentional or negligent infliction of emotional distress, negligence in any action, breach of express or implied contract, and any violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family Medical Leave Act ("FMLA"), the Oregon Family Leave Act ("OFLA"), the Age Discrimination in Employment Act ("ADEA"), and ORS chapters 652, 653, and 659A, or any other state or federal statute or regulation or local rule or ordinance based on any act or omission prior to the execution of this Release by Coach.  This Release includes all claims under any grievance or complaint procedure of any kind before any panel, tribunal, agency, commission, or decision-maker of any kind.

(b)  Coach acknowledges that Coach has carefully read and fully understands the provisions of the above Section. Coach understands and acknowledges that: (a) the preceding Section includes a voluntary waiver of any and all claims that Coach has or may have against the University arising under the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. Section 621, et seq. ("ADEA Claims"); (b) Coach has waived any and all ADEA Claims pursuant to this Release and in exchange for consideration, the value of which exceeds the payments or remuneration to which Coach was already entitled; (c) Coach has been, and is hereby, advised to consult with an attorney prior to executing this Release, and Coach has retained an attorney to provide legal advice concerning this Release; (d) Coach has been, and is hereby, informed that Coach has a period of at least twenty-one (21) days to consider the terms of this Release from

DocuSign Envelope ID: CA29289D-3D3F-4ADC-9468-F0E6F89EFC56

the date on which the University delivers the Release to Coach and if Coach executes this Release prior to that time Coach expressly and voluntarily waives the foregoing twenty-one (21) day period; and (e) Coach may revoke this Release at any time during the seven (7) days following the date of Coach's execution of this Release, this Release shall not become effective or enforceable until such revocation period has expired. To revoke this Release, Coach must deliver a written notice of revocation to Rebecca Gose, General Counsel, Oregon State University, 638 Kerr Administration Building, Corvallis, Oregon, 97331 within the seven (7) day revocation period.

(c)  As used in this Release, the term "University" means Oregon State University and its schools, colleges, divisions, departments, and units, and their past and present directors, trustees, officers, administrators, faculty, current and former employees, and their attorneys, insurers, agents, and business associations and their predecessors, successors, heirs, and assigns.

2.  <u>Exclusion</u>.  For the avoidance of doubt, Section 1 of this Release does not release University from providing severance or deferred compensation payments in accordance with Section 4.2 of the Employment Agreement.

3.  <u>Choice of Law</u>.  The Release shall be governed and interpreted under Oregon law, without regard to principles of choice of law.

4.  <u>No Assignment</u>.  Coach represents that Coach has not sold, transferred, or assigned to a third party any claims that Coach may have. Coach represents that any claims Coach may have are unencumbered and otherwise within Coach's power to dispose of.

First Amendment to  Employment Agreement and Notice of Appointment for Head Coach

This First Amendment to Employment Agreement and Notice of Appointment for Head Coach ("Agreement") is made between Oregon State University ("University") and Gabe Winkler ("Coach") and amends the Employment Agreement and Notice of Appointment for Head Coach between the parties dated September 23, 2021 by last signature (the "Agreement").

### Agreement

**A.** Section 2 of the Agreement is hereby replaced in its entirety with the following:

"2.1 **Duration.** Coach's employment under this Agreement is for a fixed term period beginning the Effective Date and ending August 31, 2026 (the "Term"). Each year of the Agreement ("Contract Year") is a consecutive period of time that may be more or less than 12 months, and is defined as follows:

| | | |
|---|---|---|
| Contract Year 1 | September 1, 2021 – | August 31, 2022 |
| Contract Year 2 | September 1, 2022- | August 31, 2023 |
| Contract Year 3 | September 1, 2023 - | August 31, 2024 |
| Contract Year 4 | September 1, 2024 - | August 31, 2025 |
| Contract Year 5 | September 1, 2025 - | August 31, 2026 |

2.2 **Conditions.** This Agreement is subject to the rules, standards and policies of the University except as otherwise provided in this Agreement. Coach's employment under this Agreement is contingent on University determining Coach is authorized to work in the United States for University."

**B.** Section 3.1 is hereby replaced in its entirety with the following:

"3.1 **Annual Base Salary.** The full time 12-month annual base salary rate for duties performed by Coach under this Agreement payable in monthly installments for each Contract Year, consistent with University payroll practices for all other coaches is:

| | |
|---|---|
| Contract Year 1 | $87,000 |
| Contract Year 2 | $92,004 |
| Contract Year 3 | $97,008 |
| Contract Year 4 | $102,000 |
| Contract Year 5 | $107,004" |

**C.** Section 3.4 is replaced in its entirety with "Reserved".

**D.** Section 3.5 is replaced in its entirety with the following:

"3.5 **Incentive Compensation for Intercollegiate Rowing Association Athletic Achievement**.

(a) University agrees to pay Coach the following specified amounts in any year in which the Team achieves the following for any year in which Coach is coach of the Team at the time of the event:

Notice of Removal - Exhibit A
Page 43 of 66

|     |                                           |                                  |
|-----|-------------------------------------------|----------------------------------|
| (1) | Qualify for the IRA                       | one half of one month's salary   |
| (2) | Finish in the top 10 at the IRA Championship | $3,000                        |
| (2) | Finish in the top 6 at the IRA Championship  | $5,000                        |

(b)  These amounts are not cumulative. The maximum amount Coach is eligible to receive under this Section 3.5 in any year is $5,000.

(c)  Payment will be made no later than June 30 of the year in which Coach is entitled to payment under this Section 3.5."

**E.**  All references to "Pac-12 Conference" and "Conference" in the Agreement are now understood to mean the University's current NCAA athletics conference or any other NCAA athletics conference that University joins.

Except as amendment by this First Amendment to the Agreement all other provisions of the Agreement remain in full force and effect.

Agreed to:

OREGON STATE UNIVERSITY

By: _S. Scott Barnes_                          9/16/2024 | 14:16:08 PDT
S. Scott Barnes                                Date
Vice President/Director of Athletics

By: _C. L. Ho'a_                               9/17/2024 | 14:19:00 PDT
Carla L. Ho'a                                  Date
Vice President for Finance and Administration/CFO

COACH

By: _[signature]_                              9/17/2024 | 08:36:58 PDT
Gabe Winkler                                   Date

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF BENTON

| | |
|---|---|
| **GABRIEL WINKLER**, | Case No.    25CV56719 |
| Plaintiff, | **SUMMONS** |
| vs. | |
| **OREGON STATE UNIVERSITY**, and **S. SCOTT BARNES**, an individual, | |
| Defendants. | |

To:    S. Scott Barnes:

IN THE NAME OF THE STATE OF OREGON:  You are hereby required to appear and answer the Complaint filed in the above-entitled cause within thirty (30) days from the date of service of this Summons upon you; and if you fail to so answer for want thereof, the Plaintiff will apply to the court for the relief demanded therein.

HUTCHINSON COX

By: _Andrea Coit_____
Andrea D. Coit, OSB #002640
Of Attorneys for Plaintiff

**NOTICE TO DEFENDANT: READ THESE PAPERS CAREFULLY!**

You must "appear" in this case, or the other side will win automatically.  To "appear" you must file with the court a legal paper called a "motion" or "answer."  The "motion" or "answer" must be given to the court clerk or administrator within 30 days, along with the required filing fee.  It must be in proper form and have proof of service on the Plaintiff's attorney or, if the Plaintiff does not have an attorney, proof of service on the Plaintiff.

If you have any questions, you should see an attorney immediately.  If you need help in finding an attorney, you may contact the Oregon State Bar's Lawyer Referral Service online at www.oregonstatebar.org or by calling (503) 684-3763 (in the Portland metropolitan area) or toll-free elsewhere in Oregon at (800) 452-7636.

1 –   SUMMONS

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF BENTON

| | |
|---|---|
| **GABRIEL WINKLER**, | Case No.    25CV56719 |
| Plaintiff, | **SUMMONS** |
| vs. | |
| **OREGON STATE UNIVERSITY**, and **S. SCOTT BARNES**, an individual, | |
| Defendants. | |

To:    Oregon State University:

IN THE NAME OF THE STATE OF OREGON:  You are hereby required to appear and answer the Complaint filed in the above-entitled cause within thirty (30) days from the date of service of this Summons upon you; and if you fail to so answer for want thereof, the Plaintiff will apply to the court for the relief demanded therein.

HUTCHINSON COX

By: _Andrea Coit_____
       Andrea D. Coit, OSB #002640
       Of Attorneys for Plaintiff

### NOTICE TO DEFENDANT: READ THESE PAPERS CAREFULLY!

You must "appear" in this case, or the other side will win automatically.  To "appear" you must file with the court a legal paper called a "motion" or "answer."  The "motion" or "answer" must be given to the court clerk or administrator within 30 days, along with the required filing fee.  It must be in proper form and have proof of service on the Plaintiff's attorney or, if the Plaintiff does not have an attorney, proof of service on the Plaintiff.

If you have any questions, you should see an attorney immediately.  If you need help in finding an attorney, you may contact the Oregon State Bar's Lawyer Referral Service online at www.oregonstatebar.org or by calling (503) 684-3763 (in the Portland metropolitan area) or toll-free elsewhere in Oregon at (800) 452-7636.

1 –   SUMMONS

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF BENTON

| | |
|---|---|
| **GABRIEL WINKLER**, | Case No.   25CV56719 |
| Plaintiff, | **ACCEPTANCE OF SERVICE BY ATTORNEY** |
| vs. | |
| **OREGON STATE UNIVERSITY**, and **S. SCOTT BARNES**, an individual, | |
| Defendants. | |

I, Naomi Levelle Haslitt of Miller Nash LLP, attorney for Defendants herein, hereby acknowledge receipt of service of a true copy of Summonses and Plaintiff's Complaint in the above-captioned case on behalf of Defendants.

I hereby waive any objections to the form of the service of the Summonses and Complaint. Defendants retain all other defenses and objections to the lawsuit.

DATED this ___3rd___ day of _____November_____, 2025.

MILLER NASH LLP

By: _____
Naomi Levelle Haslitt, OSB #075857
naomi.haslitt@millernash.com
Of Attorneys for Defendants

1 –   ACCEPTANCE OF SERVICE BY ATTORNEY

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

Notice of Removal - Exhibit A
Page 47 of 66

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF BENTON

| | |
|---|---|
| **GABRIEL WINKLER**, | Case No.    25CV56719 |
| Plaintiff, | **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT S. SCOTT BARNES** |
| vs. | |
| **OREGON STATE UNIVERSITY**, and **S. SCOTT BARNES**, an individual, | |
| Defendants. | |

TO:    Defendant S. Scott Barnes and his attorneys of record:

Pursuant to Rules 36 and 43 of the Oregon Rules of Civil Procedure, Plaintiff Gabriel Winkler requests that Defendant Barnes produce the documents and things described hereinafter, in accordance with the definitions and instructions set forth below, for inspection and copying on or before 30 days from the date hereof, at the offices of Hutchinson Cox, 940 Willamette Street, Suite 400, Eugene, Oregon 97401.

**NOTICE**

THIS REQUEST FOR PRODUCTION OF DOCUMENTS IS A CONTINUING REQUEST THROUGH THE TIME OF TRIAL AND DEFENDANT IS REQUESTED TO UPDATE HIS RESPONSES TO THIS REQUEST FOR PRODUCTION AS ADDITIONAL DOCUMENTS BECOME AVAILABLE TO DEFENDANT.

IN THE EVENT THESE REQUESTS AND CONTINUING REQUESTS FOR DOCUMENTS ARE NOT COMPLIED WITH, PLAINTIFF RESERVES THE RIGHT TO MOVE TO EXCLUDE TESTIMONY GERMANE TO OR BASED UPON INFORMATION OTHERWISE CONTAINED IN OR RELEVANT TO SUCH DOCUMENTS AT THE TIME OF TRIAL, AND TO REQUEST POSTPONEMENT OR CONTINUANCE OF THE TRIAL UNTIL SUCH DOCUMENTS ARE DELIVERED.

///

1 –  PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
      DOCUMENTS TO DEFENDANT S. SCOTT BARNES

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

**INSTRUCTIONS AND DEFINITIONS**

A.      Each request hereinafter contained extends to any documents in the possession, custody or control of Defendant.  The document is deemed to be in the possession, custody or control of Defendant if it is in the physical custody of Defendant, or it is in the physical custody of any other person and Defendant (a) owns such documents in whole or in part; (b) has a right to use, inspect, examine or copy such document on any terms; (c) has any understanding, express or implied, that Defendant may use, inspect, examine or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine or copy such document.

B.      "You" and "Your" refer to S. Scott Barnes or others acting on his behalf.

C.      "Document" as used in this request, refers to any materials containing information, data, or data compilation no matter how recorded or stored, including, and not limited to, emails, text messages, voicemails, audio or video recordings, photographs, drawings, writings, and social media posts, whether stored on paper, as electronically stored information (ESI), or in another physical form.

D.      "Communication" refers to the sharing and/or transfer of information, data, or data compilation between two or more people, such as memoranda, letters, emails, text messages, documents referencing verbal conversations, and messages and other ESI sent via internet-based messaging systems (e.g., Facebook Messenger or Whatsapp).

E.      "Electronically Stored Information" or "ESI" refers to any information, data, or data compilation existing in electronic or digital format.

F.      "Relating to" and "concerning" mean evidencing, having a bearing upon, or concerning, affecting, discussing, dealing with, considering, or otherwise involving in any manner whatsoever, the subject matter of the Request for Production.

///

///

2 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT S. SCOTT BARNES

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

G.      Use of the conjunctive "and" also shall be taken in the disjunctive "or" and vice versa.  Use of the term "any" also shall mean "all" and vice versa.  Use of the term "each" also shall mean "every" and vice versa.

H.      As to any document that Defendant fails to produce, state the location where such document can be found, the name of the possessor, when such documents left Defendant's possession or control and the reasons why Defendant cannot produce such document.

I.      "August 12, 2025, Letter" refers to the letter dated August 12, 2025, from Jeff Macy to Gabe Winkler with the subject title "Employment Agreement" that provided OSU's written notice of Plaintiff's termination.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**:  All documents containing or referencing communications between or among You and Plaintiff from September 1, 2021, to present.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 2**:  All documents containing or referencing communications between or among You and any other person concerning Plaintiff from September 1, 2021, to present.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 3**:  All social media content, including comments, posted by You concerning Plaintiff from September 1, 2021, to present.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 4**:  All documents, including notes, text messages, and social media posts, concerning the OSU men's rowing team from September 1, 2021, to present.  This request includes communications between or among You and any administrators, staff, or employees of OSU discussing the men's rowing team and the decision to consolidate it with the women's rowing team.

3 –    PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
       DOCUMENTS TO DEFENDANT S. SCOTT BARNES

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1          **RESPONSE**:

2          **REQUEST FOR PRODUCTION NO. 5**:  All documents, including notes, text

3    messages, and social media posts, concerning the OSU consolidated men's and women's

4    rowing team.

5          **RESPONSE**:

6          **REQUEST FOR PRODUCTION NO. 6**:  All documents concerning OSU's budget

7    for the men's rowing team.

8          **RESPONSE**:

9          **REQUEST FOR PRODUCTION NO. 7**:  All documents concerning OSU's budget

10   for the consolidated men's and women's rowing team.

11         **RESPONSE**:

12         **REQUEST FOR PRODUCTION NO. 8**:  All documents concerning Plaintiff's

13   January 15, 2025, report referenced in paragraph 24 of Plaintiff's Complaint including all

14   communications regarding this report.

15         **RESPONSE**:

16         **REQUEST FOR PRODUCTION NO. 9**:  All documents concerning allegations of

17   misconduct involving the OSU men's rowing team from September 1, 2021, to present.  This

18   request includes and is not limited to reports, investigations, notes, findings, conclusions,

19   discussions, decisions, corrective actions, and disciplinary actions concerning those

20   allegations.

21         **RESPONSE**:

22         **REQUEST FOR PRODUCTION NO. 10**:  All documents containing or referencing

23   communications between or among You and any administrators, staff, or employees of OSU

24   relating to Plaintiff's termination, including the decision to terminate Plaintiff.

25         **RESPONSE**:

26   ///

  4 –   PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
        DOCUMENTS TO DEFENDANT S. SCOTT BARNES

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1    **REQUEST FOR PRODUCTION NO. 11**:  All documents concerning the June 23,

2  2025, meeting between Plaintiff, Defendant Barnes, and Jeff Macy where Plaintiff was

3  informed that he was going to be terminated.

4    **RESPONSE**:

5    **REQUEST FOR PRODUCTION NO. 12**:  All documents concerning the

6  misconduct alleged in the August 12, 2025, Letter.  This request includes and is not limited

7  to communications between or among You and OSU administrators or the Equal Opportunity

8  and Access office (EOA) concerning the allegations and any investigations into the

9  allegations.

10    **RESPONSE**:

11    **REQUEST FOR PRODUCTION NO. 13**:  All documents concerning the

12  August 12, 2025, Letter itself, including communications with OSU administrators regarding

13  the preparation and content of the letter.

14    **RESPONSE**:

15    **REQUEST FOR PRODUCTION NO. 14**:  All documents concerning Plaintiff's

16  employment with OSU, including any meetings, discussions, or communications regarding

17  Plaintiff's employment status.

18    **RESPONSE**:

19    **REQUEST FOR PRODUCTION NO. 15**:  All documents concerning the

20  appointment or selection of Mike Eichler, the women's rowing team head coach, to lead the

21  consolidated rowing teams.

22    **RESPONSE**:

23    **REQUEST FOR PRODUCTION NO. 16**:  All documents containing or referencing

24  communications between You and Mike Eichler from August 1, 2025, to August 31, 2025.

25    **RESPONSE**:

26  *///*

5 –  PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
     DOCUMENTS TO DEFENDANT S. SCOTT BARNES

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1    **REQUEST FOR PRODUCTION NO. 17**:  All documents concerning any

2    complaints made by athletes, staff, or other individuals about the male athlete referenced in

3    Plaintiff's January 14, 2025, report to EOA.

4    **RESPONSE**:

5    **REQUEST FOR PRODUCTION NO. 18**:  All documents concerning any other

6    coaches or athletic staff who were terminated for cause from September 1, 2021, to

7    August 12, 2025.

8    **RESPONSE**:

9    **REQUEST FOR PRODUCTION NO. 19**:  All documents concerning any other

10   coaches or athletic staff who reported sexual harassment, discrimination, or misconduct from

11   September 1, 2021, to August 12, 2025.

12   **RESPONSE**:

13   **REQUEST FOR PRODUCTION NO. 20**:  All documents concerning any

14   statements made to the media, public, or OSU community regarding Plaintiff's termination.

15   This request includes any drafts of those statements.

16   **RESPONSE**:

17   **REQUEST FOR PRODUCTION NO. 21**:  All documents concerning any

18   statements made to the media, public, or OSU community regarding the consolidation of the

19   men's and women's rowing teams.

20   **RESPONSE**:

21   **REQUEST FOR PRODUCTION NO. 22**:  All documents concerning any previous

22   complaints, grievances, or lawsuits filed against You alleging retaliation, due process

23   violations, or breach of contract relating to employment terminations from September 1,

24   2018, to August 12, 2025.

25   **RESPONSE**:

26   ///

6 –   PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
      DOCUMENTS TO DEFENDANT S. SCOTT BARNES

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1    **REQUEST FOR PRODUCTION NO. 23**:  All documents concerning any internal

2    audits, reviews, or assessments of Your handling of sexual harassment, discrimination, or

3    misconduct complaints from September 1, 2021, to August 12, 2025.

4    **RESPONSE**:

5    **REQUEST FOR PRODUCTION NO. 24**:  All non-privileged documents

6    containing or referencing communications between You and any person concerning this

7    lawsuit.

8    **RESPONSE**:

9    **REQUEST FOR PRODUCTION NO. 25**:  All documents You intend to use to

10   support Your defenses in this action.

11   **RESPONSE**:

12   **REQUEST FOR PRODUCTION NO. 26**:  All documents You receive in response

13   to a subpoena in this action.

14   **RESPONSE**:

15   DATED this 2nd day of December, 2025.

16                              HUTCHINSON COX

17

18   By: ___s/Jonathan M. Hood_____
         Andrea D. Coit, OSB #002640
19       acoit@eugenelaw.com
         Jonathan M. Hood, OSB #133872
20       jhood@eugenelaw.com
         Telephone:   541-686-9160
21       Facsimile:    541-343-8693
         Of Attorneys for Plaintiff

22       Trial Attorney: Andrea D. Coit

23

24

25

26

7 –   PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
      DOCUMENTS TO DEFENDANT S. SCOTT BARNES

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

**CERTIFICATE OF SERVICE**

I certify that on December 2, 2025, I served or caused to be served a true and complete copy of the foregoing **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT S. SCOTT BARNES** on the party or parties listed below as follows:

☐  Via the Court's E-filing System

☐  Via First-Class Mail, Postage Prepaid

☒  Via Email

☐  Via Personal Delivery

☐  Via Facsimile

Naomi Levelle Haslitt
Naomi.haslitt@millernash.com
Katie Bennett
Katie.bennett@millernash.com
Miller Nash LLP
1140 SW Washington Street, Suite 700
Portland, OR 97205

Of Attorneys for Defendants

HUTCHINSON COX

By:    s/Jonathan M. Hood
Andrea D. Coit, OSB #002640
Jonathan M. Hood, OSB #133872
Of Attorneys for Plaintiff

8 –  PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT S. SCOTT BARNES

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR 97440
(541) 686-9160

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF BENTON

**GABRIEL WINKLER**,

        Plaintiff,

    vs.

**OREGON STATE UNIVERSITY**, and
**S. SCOTT BARNES**, an individual,

        Defendants.

Case No.    25CV56719

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY**

TO:    Defendant Oregon State University and its attorneys of record:

Pursuant to Rules 36 and 43 of the Oregon Rules of Civil Procedure, Plaintiff Gabriel Winkler requests that Defendant Oregon State University produce the documents and things described hereinafter, in accordance with the definitions and instructions set forth below, for inspection and copying on or before 30 days from the date hereof, at the offices of Hutchinson Cox, 940 Willamette Street, Suite 400, Eugene, Oregon 97401.

**NOTICE**

THIS REQUEST FOR PRODUCTION OF DOCUMENTS IS A CONTINUING REQUEST THROUGH THE TIME OF TRIAL AND DEFENDANT IS REQUESTED TO UPDATE ITS RESPONSES TO THIS REQUEST FOR PRODUCTION AS ADDITIONAL DOCUMENTS BECOME AVAILABLE TO DEFENDANT.

IN THE EVENT THESE REQUESTS AND CONTINUING REQUESTS FOR DOCUMENTS ARE NOT COMPLIED WITH, PLAINTIFF RESERVES THE RIGHT TO MOVE TO EXCLUDE TESTIMONY GERMANE TO OR BASED UPON INFORMATION OTHERWISE CONTAINED IN OR RELEVANT TO SUCH DOCUMENTS AT THE TIME OF TRIAL, AND TO REQUEST POSTPONEMENT OR CONTINUANCE OF THE TRIAL UNTIL SUCH DOCUMENTS ARE DELIVERED.

///

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

**INSTRUCTIONS AND DEFINITIONS**

A.      Each request hereinafter contained extends to any documents in the possession, custody or control of Defendant.  The document is deemed to be in the possession, custody or control of Defendant if it is in the physical custody of Defendant, or it is in the physical custody of any other person and Defendant (a) owns such documents in whole or in part; (b) has a right to use, inspect, examine or copy such document on any terms; (c) has any understanding, express or implied, that Defendant may use, inspect, examine or copy such document on any terms; or (d) has, as a practical matter, been able to use, inspect, examine or copy such document.

B.      "You," "Your," and "OSU" refer to Oregon State University or others acting on its behalf.

C.      "Document" as used in this request, refers to any materials containing information, data, or data compilation no matter how recorded or stored, including, and not limited to, emails, text messages, voicemails, audio or video recordings, photographs, drawings, writings, and social media posts, whether stored on paper, as electronically stored information (ESI), or in another physical form.

D.      "Communication" refers to the sharing and/or transfer of information, data, or data compilation between two or more people, such as memoranda, letters, emails, text messages, documents referencing verbal conversations, and messages and other ESI sent via internet-based messaging systems (e.g., Facebook Messenger or Whatsapp).

E.      "Electronically Stored Information" or "ESI" refers to any information, data, or data compilation existing in electronic or digital format.

F.      "Relating to" and "concerning" mean evidencing, having a bearing upon, or concerning, affecting, discussing, dealing with, considering, or otherwise involving in any manner whatsoever, the subject matter of the Request for Production.

///

2 –    PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
       DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

G.     Use of the conjunctive "and" also shall be taken in the disjunctive "or" and vice versa.  Use of the term "any" also shall mean "all" and vice versa.  Use of the term "each" also shall mean "every" and vice versa.

H.     As to any document that Defendant fails to produce, state the location where such document can be found, the name of the possessor, when such documents left Defendant's possession or control and the reasons why Defendant cannot produce such document.

I.     "August 12, 2025, Letter" refers to the letter dated August 12, 2025, from Jeff Macy to Gabe Winkler with the subject title "Employment Agreement" that provided OSU's written notice of Plaintiff's termination.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1**:  All employment agreements, contracts, amendments, extensions, or modifications between You and Plaintiff in effect between September 1, 2021, through August 19, 2025.  This request includes and is not limited to the Employment Agreement dated September 23, 2021, and the First Amendment to Employment Agreement dated September 17, 2024.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 2**:  All documents concerning Plaintiff's compensation from September 1, 2021, to August 12, 2025, including salary, benefits, incentives, travel benefits, and instructional compensation opportunities.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 3**:  All documents identifying, describing, or otherwise referencing the job duties, responsibilities, and expectations for the head coach position of OSU's men's rowing team in effect between September 1, 2021, through August 19, 2025.  This request includes documents concerning the head coach's responsibilities and obligations for documenting, reporting, investigating, and otherwise responding to observations, complaints, or reports of harassment and discriminatory conduct.

3 –   PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
      DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1

**RESPONSE**:

2

**REQUEST FOR PRODUCTION NO. 4**:  OSU's policies, rules, and procedures in

3

effect between September 1, 2021, through August 19, 2025, relating to harassing and

4

discriminatory conduct.  This request includes anti-harassment, anti-discrimination, and anti-

5

retaliation policies, the procedures for reporting harassment and discrimination, and OSU's

6

procedures for responding to reports of harassment and discrimination.

7

**RESPONSE**:

8

**REQUEST FOR PRODUCTION NO. 5**:  All documents concerning reports made by

9

Plaintiff to the Equal Opportunity and Access office (EOA) or any other OSU department

10

regarding sexual harassment, discrimination, or other misconduct, including Your response,

11

investigation, and handling of the reports.  This request includes and is not limited Plaintiff's

12

January 15, 2025, report referenced in paragraph 24 of Plaintiff's Complaint, Your investigation

13

of the allegations in that report, and all communications between or among any administrators,

14

staff, or employees of OSU relating to the report.

15

**RESPONSE**:

16

**REQUEST FOR PRODUCTION NO. 6**:  All documents concerning allegations of

17

sexual harassment, discrimination, or other misconduct involving Plaintiff or the OSU rowing

18

program from September 1, 2021, to August 19, 2025.  This request includes all reports,

19

complaints, investigations, findings, conclusions, and disciplinary or other corrective action

20

taken in connection with such allegations.  This request also includes all communications

21

between or among any administrators, staff, or athletes concerning such allegations.

22

**RESPONSE**:

23

**REQUEST FOR PRODUCTION NO. 7**:  All documents concerning Plaintiff's

24

removal of a male athlete from the men's rowing team, as alleged in paragraph 33 of the

25

Complaint, including any communications about this decision between You and Plaintiff or

26

among Your administrators, staff, or employees.

4 –   PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1    **RESPONSE**:

2    **REQUEST FOR PRODUCTION NO. 8**:  All documents concerning any complaints

3    made by athletes, staff, or other individuals about the male athlete referenced in Plaintiff's

4    January 14, 2025, report to EOA.

5    **RESPONSE**:

6    **REQUEST FOR PRODUCTION NO. 9**:  All documents concerning the termination of

7    Plaintiff's employment agreement, including and not limited to termination notices, letters,

8    emails, memoranda, notes, reports, and recommendations.  **This request includes**

9    **communications between or among any administrators, staff, or employees of OSU relating**

10   **to Plaintiff's termination**.

11   **RESPONSE**:

12   **REQUEST FOR PRODUCTION NO. 10**:  All documents concerning the June 23,

13   2025, meeting between Plaintiff, Defendant Barnes, and Jeff Macy where Plaintiff was informed

14   that he was going to be terminated.

15   **RESPONSE**:

16   **REQUEST FOR PRODUCTION NO. 11**:  All documents concerning the reasons,

17   grounds, or justifications for Plaintiff's termination.

18   **RESPONSE**:

19   **REQUEST FOR PRODUCTION NO. 12**:  All documents concerning any alternatives

20   to termination that were considered for Plaintiff, including reassignment, suspension, or other

21   disciplinary measures.

22   **RESPONSE**:

23   **REQUEST FOR PRODUCTION NO. 13**:  All documents concerning each and every

24   instance of alleged misconduct in the August 12, 2025, Letter, including documents

25   substantiating each and every allegation; communications between or among administrators,

26   athletes, and staff concerning each and every allegation; and all investigations, reports, findings,

5 –   PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
       DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1  conclusions, and disciplinary or corrective actions taken in connection with each and every

2  allegation.

3        **RESPONSE**:

4        **REQUEST FOR PRODUCTION NO. 14**:  All documents concerning any

5  complaints, investigations, and disciplinary or corrective actions relating to any alleged

6  misconduct of the coaching staff of the men's rowing team, including and not limited to

7  Mike Eichler, from September 1, 2021, to present.  This request further includes and is not

8  limited to actions taken in response to the alleged sexual harassment and bullying by assistant

9  coaches referenced in the August 12, 2025, Letter.

10        **RESPONSE**:

11        **REQUEST FOR PRODUCTION NO. 15**:  All documents concerning any alleged

12  harassment, discrimination, or any other misconduct or violations of OSU policies or rules by

13  Plaintiff while he was employed with OSU.  This request includes investigations, findings, and

14  disciplinary actions taken in connection with the alleged conduct.

15        **RESPONSE**:

16        **REQUEST FOR PRODUCTION NO. 16**:  All documents concerning Plaintiff's

17  work performance while he was employed with OSU.  This request includes and is not

18  limited to performance evaluations, reviews, or assessments; commendations, awards,

19  recognition, or positive feedback; and complaints, criticisms, or concerns about Plaintiff's

20  performance.

21        **RESPONSE**:

22        **REQUEST FOR PRODUCTION NO. 17**:  All policies, procedures, guidelines, or

23  protocols in effect from September 1, 2021, through August 19, 2025, concerning the

24  termination of employees, including coaches or athletic staff.  This request includes policies

25  concerning "termination for cause" and an employee's due process rights prior to termination.

26        **RESPONSE**:

6 –  PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

Notice of Removal - Exhibit A
Page 61 of 66

**REQUEST FOR PRODUCTION NO. 18**:  All documents containing or referencing communications between Defendant Barnes and Plaintiff between September 1, 2021, and present.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 19**:  All organizational charts or documents showing the reporting structure for the athletic department, including the rowing program, from September 1, 2021, to August 12, 2025.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 20**:  All documents concerning any statements made to the media, public, or OSU community regarding Plaintiff's termination. This request includes any drafts of those statements.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 21**:  All documents concerning any statements made to the media, public, or OSU community regarding the consolidation of the men's and women's rowing teams.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 22**:  All documents concerning any internal audits, reviews, or assessments of Your handling of sexual harassment, discrimination, or misconduct complaints from September 1, 2021, to August 12, 2025.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 23**:  All documents containing or referencing communications between Jeff Macy and Scott Barnes concerning Plaintiff or the men's rowing team from September 1, 2021, to August 12, 2025.

**RESPONSE**:

///

///

7 –   PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1    **REQUEST FOR PRODUCTION NO. 24**:  All documents containing or referencing

2  any end-of-the-year exit interviews with graduating seniors of the men's rowing team from

3  January 1, 2020, to present.

4    **RESPONSE**:

5    **REQUEST FOR PRODUCTION NO. 25**:  All documents containing notes written

6  by Plaintiff concerning the men's rowing team from September 1, 2021, to August 12, 2025.

7    **RESPONSE**:

8    **REQUEST FOR PRODUCTION NO. 26**:  All documents concerning any meetings

9  between or among Plaintiff and Lidya Acar, including any notes Plaintiff took concerning the

10  meeting.

11    **RESPONSE**:

12    **REQUEST FOR PRODUCTION NO. 27**:  All documents containing or referencing

13  any statements by Lidya Acar concerning the men's rowing team.

14    **RESPONSE**:

15    **REQUEST FOR PRODUCTION NO. 28**:  All documents relating to the email sent

16  from Christiana Paradis to Plaintiff on or around February 14, 2025.  This request includes

17  documents concerning the "new information" EOA had become aware of and EOA's

18  investigation into that information.

19    **RESPONSE**:

20    **REQUEST FOR PRODUCTION NO. 29**:  All documents containing or referencing

21  communications between or among Jason Liu and Plaintiff concerning injured athletes.

22    **RESPONSE**:

23    **REQUEST FOR PRODUCTION NO. 30**:  All documents concerning Plaintiff's

24  request for a copy of his HR file on June 25, 2025, including communications between or

25  among You and Plaintiff concerning this request, communications between or among Your

26  administrators, staff, or employees concerning this request, steps You took to provide

8 –   PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
    DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1  Plaintiff with a copy of his HR file, and documents concerning the reason why You did not

2  provide Plaintiff with a copy of his HR file.

3      **RESPONSE**:

4      **REQUEST FOR PRODUCTION NO. 31**:  All documents concerning the

5  consolidation of the men's and women's rowing teams, including the decision-making

6  process, justifications, and implementation.

7      **RESPONSE**:

8      **REQUEST FOR PRODUCTION NO. 32**:  All documents concerning the

9  appointment or selection of Mike Eichler, the women's rowing team head coach, to lead the

10  consolidated rowing teams.

11      **RESPONSE**:

12      **REQUEST FOR PRODUCTION NO. 33**:  All documents concerning the financial

13  impact of consolidating the men's and women's rowing teams, including OSU's approved

14  operating budget for the men's rowing team while Plaintiff was head coach of the team,

15  OSU's approved operating budget for the consolidated rowing team, and any documents

16  concerning cost savings, budget adjustments, or financial projections.

17      **RESPONSE**:

18      **REQUEST FOR PRODUCTION NO. 34**:  All documents containing or referencing

19  communications between or among Plaintiff and his supervisor discussing the men's rowing

20  team's budget from September 1, 2025, to August 19, 2025.

21      **RESPONSE**:

22      **REQUEST FOR PRODUCTION NO. 35**:  All documents You intend to use to

23  support Your defenses in this action.

24      **RESPONSE**:

25      **REQUEST FOR PRODUCTION NO. 36**:  All documents You receive in response

26  to a subpoena in this action.

9 –   PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
      DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

1  **RESPONSE**:

2  DATED this 2nd day of December, 2025.

3                            HUTCHINSON COX

4
                            By:    s/Jonathan M. Hood
5                                 Andrea D. Coit, OSB #002640
                                  acoit@eugenelaw.com
6                                 Jonathan M. Hood, OSB #133872
                                  jhood@eugenelaw.com
7                                 Telephone:    541-686-9160
                                  Facsimile:     541-343-8693
8                                 Of Attorneys for Plaintiff

9                                 Trial Attorney: Andrea D. Coit

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

10 –  PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
      DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

Notice of Removal - Exhibit A
Page 65 of 66

**CERTIFICATE OF SERVICE**

I certify that on December 2, 2025, I served or caused to be served a true and complete copy of the foregoing **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY** on the party or parties listed below as follows:

☐   Via the Court's E-filing System

☐   Via First-Class Mail, Postage Prepaid

☒   Via Email

☐   Via Personal Delivery

☐   Via Facsimile

Naomi Levelle Haslitt
Naomi.haslitt@millernash.com
Katie Bennett
Katie.bennett@millernash.com
Miller Nash LLP
1140 SW Washington Street, Suite 700
Portland, OR 97205

Of Attorneys for Defendants

HUTCHINSON COX

By:    s/Jonathan M. Hood
        Andrea D. Coit, OSB #002640
        Jonathan M. Hood, OSB #133872
        Of Attorneys for Plaintiff

11 –  PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
       DOCUMENTS TO DEFENDANT OREGON STATE UNIVERSITY

HUTCHINSON COX
ATTORNEYS
940 WILLAMETTE STREET, SUITE 400
PO BOX 10886
EUGENE, OR  97440
(541) 686-9160

Notice of Removal - Exhibit A
Page 66 of 66